JOSEPH STEPHENSON *v.* HENRY GOFF and others.

Where it is shown that the boundary lines of the land claimed by one holding under a confirmation by the United States and a survey made by a government surveyor, were run as near as possible to a bar, the whole of which was subject to be overflowed at high water, and the greater part of it to an annual overflow, so as to include all the high land susceptible of ownership, the proprietor will be entitled to the alluvion, or batture, subsequently formed on the site of the bar.

A mere trespasser cannot defend himself, by alleging imperfections in the title of a plaintiff, which is apparently good.

APPEAL from the District Court of West Feliciana, *Johnson,* J.

GARLAND, J.   The plaintiff claims to have possessed as owner since the year 1827, a tract of land bounded by the lands of Jesse Saunders, by vacant land, and on the front and one side by the Mississippi river, of a portion of which he alleges that Goff, Salyers and Jeter have taken possession, and that they now hold it contrary to his express wishes and warning to them. He avers that they are committing various trespasses, by cutting down and selling the wood and timber thereon.   He prays for an injunction to prevent further trespasses, and that the defendants be ejected from the premises.

Goff moved to be allowed to sever from his co-defendants in his defence, which was ordered, and he answered by a general denial of the allegations in the petition. Salyers never answered at all; and the suit as to Jeter was dismissed on the motion of the plaintiff.

The evidence shows that, in the year 1827, the vendor of the

plaintiff, claiming to have a donation claim confirmed by the United States, had it located or surveyed by a deputy surveyor of the United States, who swears that he was authorized to make it. He identifies the plat he then made. From this plat, it is shown that the upper line, which is between Saunders and the plaintiff, commences on the bank of the river; the front runs down some distance, and in consequence of a bend in the river and of its touching a flat mud or sand bar, the line was run at right angles with the river until it went back far enough to clear the bar, when it again runs down for a front, until it touches the lower part of the bend of the river and the bar that was forming. The lower line then runs along the edge of the bar, as near as practicable, making the river the side line its whole length; thence the back line runs north to a corner; thence east to the point of beginning on the bank of the Mississippi. The surveyor swears that at the time of the survey, the plaintiff was in possession of the land; but his deed is not dated until the year 1828. He says, that a part of the front was on the bank of the river; that the balance was a very low mud bar; the portion next to the main land was a very low slough; that next to the river, a little higher. This bar was not included in making up the quantity of land in the survey. The lower side line was run as near to the bank of the river as the land was susceptible of ownership. At the time of making the survey the whole bar in front was overflowed every year, at a very moderate high water. It was not considered land at all, only a bar. In making the survey the lower side line was not marked, as the river was considered the line. At a low stage of water the distance from the main land across the bar to the water was nearly half a mile. There were some ridges on the bar, or places higher than others; on these there were trees—small cotton wood and willows. He says, that it is not usual with him to include mud or sand bars in his surveys of claims. Was instructed by the Land Department not to do so. He was paid by the United States for making the survey of the claim under which the plaintiff holds possession.

There was a good deal of testimony taken both by the plaintiff and defendant to show what was the state of the bar on the

front and side of the land in 1827 and 1828, and whether it was susceptible of ownership then. It is contradictory in some respects. Nearly all the witnesses say, that there were lateral ridges on the bar, higher than the other parts of it, and some of them nearly as high as the main land. On these were trees of considerable size. But the weight of the testimony is, that the whole bar was overflowed at high water, and much the greatest portion every year. Since the year 1828, the bar has, from the alluvial deposites, rizen rapidly, has extended itself, and, for a considerable distance from the lines run in 1828, was as high as any part of the land at the time this suit was commenced. On the spot where this bar formerly existed, and outside of the lines run in 1827, the defendants Goff, Salyers and Jeter, established themselves as wood choppers. One of them in front of the tract, and the other two on the land on the side of it. They do not pretend that they have any pre-emption right, or a wish to acquire one; but contend that the possession of the plaintiff does not rightfully extend so far as he pretends, and that he cannot disturb them. He proves that he has, long before and subsequent to this suit, exercised various acts of possession on the land in the immediate vicinity of the cabins of the defendants. The Surveyor General of the United States, in the year 1844, certifies that from the public surveys on file in his office, there is on the north side of the claim under which the plaintiffs holds a strip of vacant land, which *will be* surveyed and returned as public land, it lying between the line of the tract claimed by the plaintiff and the river, which land is subject to entry by pre-emption, in the same manner as other public lands. He then proceeds to intimate a doubt whether or not the plaintiff's claim has been properly located, and suggests a possibility that the land within the lines actually run, may yet be returned as public land, and be rightfully subject to entry, for the benefit of the government, notwithstanding the survey in 1827, and the possession ever since.

The court below was of opinion that the plaintiff had not made out his case, and gave judgment for the "*defendants*;" from which the plaintiff has appealed.

From the manner in which the cause was conducted below,

it is somewhat doubtful whether or not the case was tried as to
the defendant Salyers, although the judge says, that the judg-
ment is for the "defendants." Goff answered separately, and
moved for an order that in his defence he might be severed from
his co-defendants, which was entered. Salyers never appear-
ed, and a judgment by default was entered against him ; and
the suit as to Jeter was dismissed by the plaintiff. The appeal
was asked for in open court, and no one was cited. As the ap-
peal bond is given to Goff alone, we shall consider him as the
only appellee, and leave the plaintiff and Salyers to ascertain
whether or not the judgment below applied to him.

From the testimony there cannot be a doubt that the plain-
tiff, in the year 1827, had possession of a tract of land surveyed
by a United States surveyor, a part of the front of which, and
one side line were run very close to the bar or alluvion then
forming ; and the main question in the cause is, was the land
on which Goff has fixed himself susceptible of ownership or oc-
cupation at the time when the lines of the plaintiff were run ?
If it were and the lines were not extended so as to include all
the high land, the plaintiff cannot now claim the batture which
has formed adjoining the main land. The evidence satisfies us
that the claim under which the plaintiff alleges possession was
located as near to the bar and alluvion forming as it could be.
The surveyor is positive in his assertion, that the lines were so
run. He says that the side line was not marked at all, as he
considered the river the boundary. This being the case, we
think the plaintiff is entitled to the possession of the batture
formed adjoining his land since his survey. This case is very
similar to that of *Bonis et al.* v. *James et al*, decided in March
last. If the United States intend to disregard the location and
survey made by their own surveyor, and enter into a contest
with the plaintiff, it is a matter with which we have nothing to
do now. The defendant has no right to anticipate the result of
such a contest, and take possession of the land in advance ; nor
has he a right to assume the rights of the United States, if any
they have, and provoke a contest in their behalf for his own
benefit. The mere statement of the Surveyor General, that from
the plats in his office the land appears to be vacant, does not

make it so ; nor does his declaration that it may hereafter appear that there has been an improper location of the confirmed claim, destroy it. We cannot countenance the idea, that because a citizen has, or may have a controversy with the United States, or another citizen actually or in prospective, in relation to his rights and title to land, that this authorizes any one to take possession of it, and when sued for so doing, to interpose those difficulties, to protect him from the consequences of an open violation of the rights of both parties.

We are of opinion that the judgment in favor of the defendant is erroneous, and ought to be reversed.

It is, therefore, ordered and decreed, that the judgment appealed from be annulled and reversed ; and it is further ordered and decreed, that the plaintiff, Joseph Stephenson, do recover of the defendant Henry Goff, the possession of the land claimed in his petition, and be quieted therein ; the defendant paying the costs in both courts.

*Ratliff*, for the appellant.

*Ivor*, for the defendants.