FRANC W. LORD et al., Plaintiffs in Error, v. FRANK A. CURRY, Defendant in Error.

Opinion filed January 26, 1916.

Rehearing denied March 2, 1916.

1. In an action of ejectment whereby it is sought to recover the possession of a tract of land and the basis of the title of the plaintiffs is a patent to the State of Florida from the United States of America, conveying a certain fractional section, which embraces Government lot one (1), which patent refers to the official survey so as to make it a part thereof, the plaintiffs deriving their title to such Government lot by mesne conveyances, and it is claimed that the tract of land the recovery of the possession of which is sought forms a part of such government lot, such official survey, including the government plat and field notes, must control in determining such claim.

2. Where the official government plat shows that government lot one (1) of a fractional section of land contains twenty-one (21) and 73-100 acres and it also appears from such official plat and field notes that the government surveyor stopped his survey at what he called a "Lagoon," and it further appears from such plat and field notes that the surveyor did not intend to define the sinuosities of the beach or to make the banks of the lagoon the boundary of the lot, but his intention is rather indicated to define by boundary lines the land embraced in such lot one (1) and not to in-

clude a tract of land, whether marsh land, tide land or other-
wise, containing about fifteen (15) acres, which lies off the
point at which the official survey stopped, such tract of
land must be held not to be included within the confines of
such government lot one (1). It makes no difference whether
the southwest point of the survey of such lot stopped at
water that may have been between that point and the land
beyond, or whether there was a narrow strip of land from
the point at which the survey of lot one (1) stopped, con-
necting the land beyond, it must be held that the land beyond
such point was left as unsurveyed.

3. Swamp, boggy and marsh land is properly treated as land,
   and land does not pass under a patent or deed as an ap-
   purtenance to land.

4. Where the facts and circumstances connected with a govern-
   ment survey affirmatively disclose an intention to limit the
   grant to actual traverse lines, these must be treated as defi-
   nite boundaries; and a patent to a fractional section of land
   does not necessarily confer riparian rights because of the
   presence of meanders.

Writ of Error to Circuit Court, Manatee County; F.
A. Whitney, Judge.

Judgment affirmed.

*Singeltary & Reaves,* for Plaintiffs in Error;

*C. C. Whitaker,* for Defendant in Error.

SHACKLEFORD, J.—Franc W. Lord and others insti-
tuted an action of ejectment against Frank A. Curry for
the recovery of the possession of the following described
parcel of land: "A tract of land in Lot No. One (1),
Section One (1), Township Thirty-nine (39) South,

Range Eighteen (18) East, beginning at a point South 80 degrees 11 minutes West, and distant nineteen hundred and forty-one (1941) feet from, the meander corner on the east boundary of said Section on the north side of Roberts Bay, running thence South 8 degrees 30 minutes West 110 feet; thence South 68 degrees 45 minutes West 67.5 feet; thence North 58 degrees 30 minutes West 67 feet; thence North 3 degrees 00 minutes West 85.5 feet; thence North 84 degrees 45 minutes East 141 feet to the point of beginning."

The amended declaration is in the usual statutory form, to which the defendant filed two pleas, not guilty, and a denial of possession. Issue was joined upon these pleas and a trial was had before a jury, which resulted in a verdict and judgment in favor of the defendant, and which judgment the plaintiffs have brought here for review. Thirty-four errors are assigned, all of which, with the exception of the first three and the last, are based upon instructions given at the request of the defendant and the refusal of certain instructions requested by the plaintiffs. The first three assignments are based upon the overruling of objections interposed by the plaintiffs to certain questions propounded by the defendant to two witnesses introduced in his behalf while the last assignment is based upon the overruling of the motion for a new trial, which motion consists of twenty-six grounds, those urged before us questioning the sufficiency of the evidence to support the verdict. It will not be necessary to discuss these assignments in detail, though we have carefully read the transcript of the record, as well as the full and able briefs which have been presented by the counsel for the respective parties, and have considered all the assignments which have been argued. We think

Lord v. Curry—Opinion of Court

that the application of a few well-settled principles of law to the facts established by the evidence adduced will prove decisive of the case.

It is admitted by the respective counsel for the parties litigant that the real party in interest as plaintiff is the Sarasota-Venice Company, a Florida Corporation, the nominal plaintiffs being the heirs of prior owners who were seized of Government lot one (1) of fractional section one (1), township thirty-nine (39) south, of range eighteen (18) east, at the time the defendant entered into the possession of the land in controversy, but such prior owners having subsequently conveyed their interest the entire beneficial interest of such Government lot one of fractional section one is now vested in the Sarasota-Venice Company. It is further admitted that the evidence establishes that such Government lot one (1), together with other lands, was patented to the State of Florida by the United States of America on the 25th day of August, 1856, under an Act of Congress of September 28, 1850, and that by mesne conveyances the plaintiffs acquired the title thereto and were the owners thereof at the time of the institution of this action, and that the defendant was at such time in the actual possession of the land in controversy. The following statement in the brief filed by the plaintiffs is not questioned by the defendant but is practically admitted by him to represent correctly the points in dispute which are presented for determination: "At the outset the court's attention is called to the fact that the plaintiffs (that is the real plaintiff, the nominal plaintiffs being the heirs of prior owners of the land who owned title at the time defendant took possession) are the undisputed owners of Lot One, Section One, Township 39 South, Range 18 East.

That this lot as surveyed and platted by the United States Government in 1847 is a triangular body of land with a given acreage of 21.73. This lot is in the shape of a right angle triangle with its base and hypothenuse washed by the waters of the bay, and the point projecting out into the bay (see defendant's exhibit 1) beyond the extreme point as shown by the Government Plat is a marked projection of land variously described in the evidence as an island and point, between which and the main shore of Lot One there is a break of tide water, the extent and duration of which is variously described by the different witnesses. This extreme point or projection is not shown by the Government Survey, and it is upon this extreme point or projection that the defendant has settled, and the plaintiffs seek to eject him upon the theory that the extreme point or projection, although not shown by the original Government Plat is under the law and facts a part and parcel of Lot One, and therefore owned by the plaintiffs. The defendant, on the other hand, claims that this extreme point or projection is so separated from Lot One as to be an island, and that the same is unsurveyed Government land, and while he claims no title in himself, he claims the right to settle the land as government land, and denies the plaintiffs' ownership or interest."

The following statement in the brief of the plaintiffs would also seem to be a fair presentation of the facts set forth therein etsablished by the evidence, together with the points of difference between the plaintiffs and the defendant: "No substantial body of water separates the extreme point held by the defendant from the main land. In fact there is no navigable water intervening, and the nature of the intervening flats is such as to give them the character of land susceptible of private ownership. The

flats between the extreme point and the mainland are land, not water.  The testimony of all the witnesses as well as the numerous photographs introduced in evidence show this to be true.  All the witnesses agree that this intervening space is flat land over which the tide occasionally flows; that the same is covered with a growth of mangroves, buttonwood, rushgrass, and other grasses, and that stumps to buttonwood and black mangroves, and some pine stumps, show a substantial growth in previous years.

The witnesses disagree as to the extent and frequency of the overflow of this intervening flat by the tide, some of them claiming that the flat is overflowed by every ordinary tide, and others that it takes an extraordinary high tide."

In other words, if the land described in the amended declaration constituted a part of Government Lot One (1) at the time the same was surveyed and platted, then the plaintiffs were entitled to recover; if it did not form part of such lot at that time, then the plaintiffs had no right to recover.  This is the problem which we are called upon to solve.

Many witnesses were examined upon behalf of each of the parties litigant and much documentary evidence was also introduced, so that the transcript of the record is quite bulky.  We shall not undertake to set out and analyze the evidence, but shall content ourselves with briefly stating such facts as are pertinent to the issue which, we think, the evidence establishes, referring to such portions of the evidence as will render this opinion the more readily intelligible.  As we understand it, while the evidence is conflicting upon some points, the controversy between the plaintiffs and the defendant is not so

much over the facts which are established as over the principles of law which are applicable thereto and which must control. It seems advisable to copy the Government plat or map of fractional section one (1) township thirty-nine (39) south, of range eighteen (18) east, a certified copy of which was filed by the defendant. Such plat also shows fractional section six (6) township thirty-nine (39) south, of range.nineteen (19) east, and is as follows:

Fl. Tp. 39 S. R. 18 E.    Fl. Tp. 39 S. R. 19 E.

The defendant also filed as an exhibit a certified copy of the official Field Notes of such survey, which copy is as follows:

"CERTIFIED COPY OF FIELD NOTES OF

The Survey of Fractional Section One Township Thirty-nine South, Range Eighteen East.
Surveyed by A. H. Jones in 1847. Var. not given.
(Office map shows a Var. 4° 40' East.)

(The following corner established by Sam Reid in 1843. No Var. given.)

In running 6th Mile West on South Bdy. of Tp. 38 S. R. 19 E. at 80.00 Chs. planted 6th Mile Post.

| | |
|---|---|
| Pine N. 40   W. 54 | Pine N. 22   E. 40 |
| Pine S. 55°   E. 37 | Pine S. 12°·W. 60 |

West on North Bdy. of Sec. From N. E. Cor.   Extension of S. Reid's line.

2.00  X lagoon or bay.

40.00  ½ M. P. Pine.

| | |
|---|---|
| Pine North 60 | Pine South 40 |

55.00  Mouth of Creek.

68.00  X do.

80.00  M. P.

| | |
|---|---|
| Pine N. 60° E. 90 | Pine N. 30° W. 73 |
| Pine S. 20° E. 60 | Pine S. 10° W. 100 |
| 3rd rate pine. | |

South on East Bdy., From N. E. Cor. (Tp. 39 S. R. 19 E.) Began at N. W. Cor. ran south.

15.00  X lagoon or bay, enter pine.

39.37  Lagoon or bay.

40.00  ½ M. P., in water.

80.00  M. P. in water.

Palmetto N. 80° W. 300    Palmetto S. 60° W. 270

No other trees.

24 Chs., pine woods, the rest water.

South Bdy., Sec. 1.   Run west from S. E. Cor.

18.00  To point of land, line skirts along the coast in water.

23.00  X point of land, enter water.

40.00  ½ M. P. in water.

65.00  X water onto Gulf beach.

70.30  Post on Gulf beach.

No trees.

Line skirts along shore, mostly in the water.

West Bdy., of Sec. 1.   Run south from N. W. Cor.

9.87  Post on lagoon.

Oak N. 60° E. 100          Oak N. 48° W. 30

Mostly small scrub.

Traverse of Sec. 1.  Begin at Post on N. E. Cor. of Tp.

| Course | Dist. | N. | S. | W. | |
|---|---|---|---|---|---|
| S. 29° W. | 12.00 | | 10.50 | 5.82 | |
| S. 50° W. | 20.00 | | 12.86 | 15.32 | |
| S. 60° W. | 35.00 | | 17.50 | 30.31 | |
| West | 10.40 | | | 10.40 | |
| N. 17° W. | 25.00 | 23.91 | | 7.31 | Mouth of creek. |
| N. 57° W. | 13.00 | 7.08 | | 10.90 | Post on West Bdy. Sec. |
| | 115.40 | 30.99 | 40.86 | 80.06 | |
| | | | 30.99 | 80.00 | |
| | | | 9.87 | .06 | |
| | | | 10.00 | | |
| | | | .13 | .06 | Error. |

Traverse of Sec. 1.  Began at Post on lagoon 39.37 Chs. from Tp. Cor.

| Course | Dist. | N. | S. | E. | W. |
|---|---|---|---|---|---|
| S.   80° W. | 18.00 | | 3,13 | | 17.73 |
| N. 32¾° E. | 32.00 | 27.75 | | 17.85 | |
| | 50.00 | 24.62 | | .12 | |
| Measured Dist. | | 24.37 | | | |
| | | .25 | | .12 | Error." |

The plaintiff presented the following map as showing Lot One (1) as they claim it to be:

Map showing Lot No. 1 of Frac'l Sec. 1 in Tp. 39 S. R. 18 E. Fla. as surveyed by me Jan. 20th, 1911, and March 10, 1914.— E. B. Camp, C. E.

The latest decision by the United States Supreme Court involving "construction of patents conveying public lands by reference to official surveys and plats indicating streams or other waters," which we have been able to find is Producers Oil Company v. Hanzen, de-

cided June 14, 1915, and reported on page 325 of 238 U. S., 35 Sup. Ct. Rep. 755, wherein it was held as follows:

"The effect of riparian rights, attached to land conveyed by patent of the United States, depends upon the local law.

As a general rule, meanders are not to be treated as boundaries and when the United States conveys a tract of land by patent referring to an official survey which shows the same bordering on a navigable river, the purchaser takes title up to the water line.

Where the facts and circumstances, however, affirmatively disclose an intention to limit the grant to actual traverse lines, these must be treated as definite boundaries; and a patent to a fractional section does not necessarily confer riparian rights because of the presence of meanders.

Where, as in this case, the survey of improved lands was made at the express request of the occupant to whom they were subsequently patented, and tne grant specified the number of acres, and other circumstances also indicated that only the lands conveyed were those within the traverse lines, the patent of the United States conferred no riparian rights, but simply conveyed the specified number of acres.

In a controversy between individuals as to the extent of the land conveyed by a patent of the United States, and to which the United States is not a party, nothing in the opinion or judgment should be taken to prejudice or impair any of the rights of the United States in the lands affected."

As was said in the body of the opinion, which was rendered by Mr. Justice McReynolds, text 338: "Many

causes decided by this court involved construction of patents conveying public lands by reference to official surveys and plats indicating streams or other waters. Railroad Co. v. Schurmeir, 7 Wall. 272, 286; Cragin v. Powell, 128 U. S. 691, 696, 9 Sup. Ct. Rep. 203; Hardin v. Jordan, 140 U. S. 371, 380, 11 Sup. Ct. Rep. 808, 838; Mitchell v. Smale, 140 U. S. 406, 412, 11 Sup. Ct. Rep. 819, 840; Horne v. Smith, 159 U. S. 40, 42, 15 Sup. Ct. Rep. 988; Grand Rapids, etc., R. R. v. Butler, 159 U. S. 87, 92, 15 Sup. Ct. Rep. 991; Ainsa v. United States, 161 U. S. 208, 229, 16 Sup. Ct. Rep. 544; Niles v. Cedar Point Club, 175 U. S. 300, 306, 20 Sup. Ct. Rep. 124; Franch-Glenn Live Stock Co. v. Springer, 185 U. S. 47, 51, 22 Sup. Ct. Rep. 563; Kirwan v. Murphy, 189 U. S. 35, 23 Sup. Ct. Rep. 599; Hardin v. Shedd, 190 U. S. 508, 519, 23 Sup. Ct. Rep. 685; Security Land etc. Co. v. Burns, 193 U. S. 167, 24 Sup. Ct. Rep. 425; Whitaker v. McBride, 197 U. S. 510, 512, 25 Sup. Ct. Rep. 530; Graham v. Gill, 223 U. S. 643, 645, 32 Sup. Ct. Rep. 396; Scott v. Lattig, 227 U. S. 229, 244, 33 Sup. Ct. Rep. 242; Chapman v. St. Francis, 232 U. S. 186, 196, 34 Sup. Ct. Rep. 297; Gautier v. Morrison, 232 U. S. 452, 459, 34 Sup. Ct. Rep. 384; Forsyth v. Smale, 7 Biss. 201 (9 Fed. Cas. No. 4950, p. 471). A review and analysis of these cases would be tedious and unprofitable; thorough acquaintance with the varying and controlling facts is essential to a fair understanding of them. They unquestionably support the familiar rule relied on by counsel for the Oil Company that in general meanders are not to be treated as boundaries and when the United States conveys a tract of land by patent referring to an official plat which shows the same bordering on a navigable river the purchaser takes title up

to the water line. But they no less certainly establish the principle that facts and circumstances may be examined and if they affirmatively disclose an intention to limit the grant to actual traverse lines these must be treated as definite boundaries. It does not necessarily follow from the presence of meanders that a fractional section borders a body of water and that a patent thereto confers riparian rights."

We would call attention to the fact that this case went to the United States Supreme Court by writ of error to a judgment rendered by the Supreme Court of Louisiana, which judgment was affirmed. We would also refer to the opinion rendered by such court. Producers Oil Co. v. Hanszen, 132 La. 691, 61 South. Rep. 754, which contains an interesting discussion of a number of the prior decisions of the United States Supreme Court referred to in the opinion rendered by Mr. Justice McReynolds. It is not contended, as we understand it, that the surveyor who made the survey of fractional section one (1), township thirty-nine (39) south, of range eighteen (18) east, made any mistake in such survey or was guilty of any fraud, therefore no such questions are before us, even if they could be properly raised in this action, as to which see Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. Rep. 988. We would also refer to Mitchell v. Smale, 140 U. S. 406, 413, 11 Sup. Ct. Rep. 819, 822, 35 L. Ed. 444-445; Franch-Glen Live Stock Co. v. Springer, 35 Oregon 312, 58 Pac. Rep. 102, which was affirmed in 185 U. S. 47; Graham v. Gill, 56 Fla. 316, 47 South Rep. 917, which was affirmed in 223 U. S. 643. Also see our prior decision in the same case, reported as Gill v. Graham, 54 Fla. 259, 45 South. Rep. 845.

We take the following statement from the reply brief

filed by the plaintiffs in error, who were the plaintiffs in the court below: "It is of course conceded by all parties that if the land described in the declaration is a part of Lot One plaintiffs should recover; if it is not a part of Lot One plaintiffs have no right to recover. But what is the criterion by which this question is to be determined? We contend that it is a question of intent purely and entirely. If the United States Government intended to include it in its patent conveying Lot One it is a part thereof; otherwise it is not. An answer to this question is a solution of the entire controversy.

The intent which should govern is that shown first by the patent in the light of the law and the surrounding circumstances. Looking at the patent we find that it so refers to the official survey as to make it a part thereof, and in fact it is the official survey which constitutes and is the description afforded by the patent of the land conveyed thereby."

In support of their contention that "the intent of the Government expressed in the patent is the cardinal principle of construction," the plaintiffs cite Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. Rep. 988, which case went up from this State by writ of error to review a judgment rendered in the United States Circuit Court for the Northern District of Florida, which judgment was affirmed. Conceding that the cited case supports the contention of the plaintiff that the intent as expressed in the patent must govern, if not directly then by necessary implication, we are of the opinion that the principles of law enunciated in the cited case as applied to the facts established by the evidence adduced, decidedly militate against the contention of the plaintiffs that the judgment rendered in the instant case was erroneous, and

should be reversed for the reasons advanced by the plaintiffs.

Turning to the official plat of fractional section one (1) which we have copied above, we find that it does not show thereon any tract of land separated from or extending beyond the extreme southwest point of Government Lot One (1), but does show what is termed thereon a "Lagoon."

The land described in the declaration contains about one-third of an acre situated upon a tract containing about fifteen acres, according to the evidence, which tract of fifteen acres the plaintiffs contend is embraced in Lot One. The field notes and the Government Plat both show that the tract of fifteen acres was not embraced in the survey of Lot One, the lines of which indicate no intention of the Surveyor to define the sinuosities of the beach or make the banks of the lagoon the boundary of the lot, but indicate rather an intention to define by boundary lines the land embraced in Lot number One, and no intention to include the tract of about fifteen acres which lies off the point at which the official survey of Lot One stopped. Whether the southwest point of the survey of Lot One stops at water that may have been between that point and the land beyond, or whether there was a narrow strip of land from the point at which the survey of Lot One stops connecting the land beyond, the lines as surveyed show an intention to leave as unsurveyed and not included in the survey of Lot One the land beyond the point at which the survey stopped. In their brief the plaintiffs, in referring to the space intervening between the point of Government Lot One (1) and the land in controversy, admitted to be in the possession of the defendant, states that the trial court "in every in-

stance refers to this intervening space as 'tide land,' not water, because the evidence all shows that it is not water and never has been. It is land and the court properly so called it." We think that the evidence shows this to be correct. This is squarely in line with previous statements by the plaintiffs in their brief which we have copied above in this opinion. The plaintiffs further state in their brief, and we think correctly in accordance with the evidence, that "when the flat (the intervening space) is reached the bay has not been reached, but in order to reach the bay the flat must be crossed and the point of land on which Curry (the defendant) lives must be crossed until the real bay has been reached." According to the Government plat, Government Lot One (1) of fractional section one (1) township thirty-nine (39) south, of range nineteen (19) east, contains twenty-one (21) and 73-100 acres, while the evidence shows that the tract of land which the plaintiffs claim to form part of Government Lot One embraces about fifteen acres. If, as the plaintiffs contend, and, as we think, the evidence establishes, there is no navigable water between the main land and the tract of land of which the defendant is admitted to be in possession, we do not see where or how the question of navigability enters into the case. We fully approve of our decision in Clement v. Watson, 63 Fla. 109, 58 South. Rep. 25, which is cited and relied upon by the plaintiffs, wherein we held as follows:

"While the navigable waters in the State and the lands under such waters including the shore or space between high and low water marks, are held by the State for the purpose of navigation and other public uses, subject to lawful governmental regulation, yet this rule is applicable only to such waters as by reason of their size,

depth and other conditions are in fact capable of navigation for useful public purposes.

Waters are not under our law regarded as navigable merely because they are affected by the tides.

The shore of navigable waters which the sovereign holds for public uses is the land that borders on navigable waters and lies between ordinary high and ordinary low water mark. This does not include lands that do not immediately border on the navigable waters, and that are covered by water not capable of navigation for useful public purposes, such as mud flats, shallow inlets, and low lands covered more or less by water permanently or at intervals, where the waters thereon are not in their ordinary state useful for public navigation.

Lands not covered by navigable waters are not included in the shore space between ordinary high and low water marks immediately bordering on navigable waters, are the subjects of private ownership, at least when the public rights of navigation, etc., are not thereby unlawfully impaired.

Where an individual owns the land covered by a small non-navigable cove that is affected by the tide, the owner may make a portion of the cove navigable for his own private purposes without losing his fishing rights in the waters over his land in the cove."

But we do not think that our holding in the cited case helps the contentions of the plaintiffs. Also see our discussion in State ex rel. Ellis v. Gerbing, 56 Fla. 603, 47 South. Rep. 353, 22 L. R. A. (N. S.) 337; Ferry Pass Inspectors' & Shippers' Association v. Whites River Inspectors' & Shippers' Association, 57 Fla. 399, 48 South. Rep. 643, 22 L. R. A. (N. S.) 345; Broward v. Mabry, 58 Fla. 398, 50 South. Rep. 826; Merrill-Stevens

Co. v. Durkee, 62 Fla. 549, 57 South. Rep. 428.   It is undoubtedly true, as we held in Rivas v. Solary, 18 Fla. 122, that "Land does not pass under a deed as an appurtenance to land," citing in support thereof Harris v. Elliott, 10 Peters (U. S.) 25, text 54.

We do not see that it makes any material difference whether the land of which the defendant is in possession was an island at the time it was surveyed and platted, but the evidence adduced would seem to show that it was not.   Although the waters have encroached on the land during the years which have intervened, it may well be doubted if, strictly speaking, such tract of land constitutes an island now.   According to the testimony of J. W. Moore, a surveyor connected with the United States Engineering Department, who was introduced on behalf of the defendant, he made a survey for the Government of Roberts Bay and Dona Bay from Cases Pass, a blue print of which survey was filed in evidence, and the witness pointed out thereon the location of Government Lot One (1), which lies between the two bays.   The witness further testified that he made such survey "partly in 1908-13" and that in September, 1913, he made soundings of the water on the flat between the main land and the land in dispute and that, in his judgment, it was "from 1-10 to a foot deep at normal high tide," for a width of "two hundred and fifty or three hundred feet."   This is practically borne out by the testimony of other witnesses and its correctness is not disputed by the plaintiffs.

It seems to us that the case of Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. Rep. 124, is well in point.   Especially see page 308, from which we take the following excerpt: "Of course, if the fractional sections patented to Margaret Bailey did not border on some body

of water there were no riparian rights, and if the conclusion of the trial court that this marsh was land (for swamp and boggy land is to be treated as land) was correct, then whatever changes may have come to the marsh —whether it became more or less subject to overflow— would not alter the fact that the rights of Margaret Bailey, the patentee, were limited to the very lands which were conveyed to her, and for which she paid, and did not extend over the meander line into the territory north.

But, it is urged, that the fact that a meandered line was run amounts to a determination by the land department that the surveyed fractional sections bordered upon a body of water, navigable or non-navigable, and that, therefore, the purchaser of these fractional sections was entitled to riparian rights; and this in face of the express declaration of the field notes and plat, that that which was lying beyond the surveyed sections was 'flag marsh,' or 'impassable marsh and water.' But there is no such magic in a meandered line. All that can be said of it is that it is an irregular line which bounds a body of land, and beyond that boundary there may be found forest or prairie, land or water, Government or Indian reservation."

Also see the same case reported in 54 U. S. App. 668, 29 C. C. A. 5, which was affirmed in 175 U. S. 300, Mr. Justice BREWER rendering the opinion therein, who began the opinion on page 305 with this statement: "But little can be added to the opinion of the Court of Appeals, whose conclusions we approve. The meander line run by Surveyor Rice along the northern borders of the tracts patented to Margaret Bailey may not have been strictly a line of boundary. Railroad Company v. Schurmeir, 7 Wall. 272; Hardin v. Jordan, 140 U. S. 371, 380;

Horne v. Smith, 159 U. S. 40; but it indicated that there was something which had stopped the survey, which limited the area of the land which the Unitied States was proposing to convey, and left to subsequent measurements the actual determination of the line of separation between the land conveyed and that which the Government did not propose to convey. Generally, these meandered lines are lines which course the banks of navigable streams or other navigable waters. Here, it appears distinctly from the field notes and the plat that the surveyor, Rice, stopped his surveys at this 'marsh' as he called it. These surveys were approved and a plat prepared, which was based upon the surveys and field notes, and shows the limits of the tracts which were for sale. The patents, referring in terms to the survey and plat, clearly disclose that the Government was not intending to and did not convey any land which was a part of the marsh. 'The patent itself does not contain all the particulars of the survey, but the grant of the lands is recited to be according to the official plat of the survey of said lands, returned to the General Land Office by the surveyor general, thereby adopting the plat as a part of the instrument.' Hardin v. Jordan, *supra*. In James v. Howell, 41 Ohio State, 696, 707, the Supreme Court of Ohio, speaking of these very patents and this marsh, said: 'The 'meander' line along the southerly border of the marsh was, in fact, intended to be the boundary line of the fractional sections.'

It may be that Surveyor Rice erred in not extending his surveys into this marsh, but his error does not enlarge the title conveyed by the patents to the surveyed fractional sections. The United States sold only the fractional sections, received only pay therefor, an amount

fixed by the number of acres conveyed, and one receiving a patent will not ordinarily be heard to insist that by reason of an error on the part of the surveyor more land was bought than was paid for, or that the Government was offering for sale."

Also see Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. Rep. 988, which is cited therein and to which we have referred *supra*. The case of Producers Oil Co. v. Hanszen, 132 La. 691, 61 South. Rep. 754, is also in point. The opinion rendered by Mr. Justice SOMERVILLE and the vigorous dissenting opinion rendered by Mr. Justice PROVOSTY cite and discuss the various authorities bearing upon the points decided. As we have previously said, the decision in this case was affirmed in 238 U. S. 325, 35 Sup. Ct. Rep. 755.

We think that the principles laid down in these cited cases are decisive of the points involved in the instant case.

The plaintiffs expressly abandon their three assignments based upon rulings on the evidence, stating that they think that "the assignments based upon the charges given and refused present the entire matter for the court's consideration." We have examined all of these charges and instructions and no reversible error has been made to appear to us. Possibly some of the instructions given may not be strictly correct from a technical point of view, but we think that they are substantially correct.

It follows from what we have said that the judgment must be affirmed.

TAYLOR, C. J., and WHITFIELD and ELLIS, JJ., concur.

COCKRELL, J., absent by reason of sickness.