## GALT et al. v. WILLINGHAM et al.

### (District Court, S. D. Florida.   August 6, 1924.)

#### No. 272.

1. **Boundaries** ⊕⇒33—**Complainants in suit to quiet title have burden of proof of location of line affirmed by them.**

   Complainants in suit to quiet title have burden of proof as to location of surveyed line, constituting boundary, affirmed by them, and denied by defendant.

2. **Boundaries** ⊕⇒3(3)—**Call in field notes for natural object prevails over calls for courses and distances.**

   Calls in government surveyor's field notes of courses and distances must give way to calls therein for natural objects, such as a certain slough, or point in edge of river.

3. **Boundaries** ⊕⇒54(4)—**In re-establishing lines of government survey, they are to be run as surveyor ran them.**

   Though the rules governing surveyors of government land require them to run range lines due north and south, yet, if a surveyor does not do this, in re-establishing the lines, they are to be run as he ran them when making his survey, and not as he ought to have run them.

4. **Boundaries** ⊕⇒8—**Section corner to prevail over minor conflicting points in line.**

   A section corner as fixed by a government surveyor being more important, and one in which he would ordinarily take more care, will prevail over minor conflicting points in the line as fixed by him.

In Equity.   Suit by Arthur T. Galt and others against E. J. Willingham and others.   Bill dismissed.

Brown & Stokes, of Miami, Fla. (Armstead Brown, of Miami, Fla., on the brief), for complainants.

Burwell & Shipp, of Miami, Fla., and McCune, Weidling & Hiaasen, of Ft. Lauderdale, Fla., for defendants.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CALL, District Judge.   The complainants filed their bill against E. J. Willingham and the other defendants to remove a cloud from their title to certain lands described in the bill of complaint.   There are several parcels of land therein described.   The only ones necessary to consider are lots 2 and 4, in fractional section 30, and the west half of the southwest quarter of said fractional section, all in township 49 south, range 43 east.   It is alleged by an amendment to the bill that defendant Willingham claimed to be the owner of lots 1 and 5 of said fractional section, lying east of complainants' lands in said section, and that there is a dispute as to the location of the boundary line between the said lands of complainants and those claimed by defendant; that defendant Willingham claims that his west line extends approximately 500 feet in width, east and west, for approximately one mile north and south, over and into the lands of complainants.   The amendment also alleges that the disputed boundaries arise out of a confusion and dispute as to the location of range line between townships in ranges 42 and 43 east; that since the bill of complaint herein was filed, at which time neither the complainants nor the defendant were in actual possession of the lands, the defendant has entered upon and taken actual possession of the disputed strip of land, cutting down the growth thereon, laying out streets, and subdividing same into lots, for the purpose of developing the same into real estate subdivision for the purpose of selling lots, and if he is allowed to proceed with his plans before the question of boundary and title to the disputed strip is ascertained and settled by the court, it will result in irreparable damage to the complainants, and require a multiplicity of suits against numerous purchasers from defendant.   The amendment then prays, in addition to the prayers of the original bill, for an injunction restraining the defendant from trespassing upon this strip of land, as a continuing trespass.

The defendant Willingham answered the bill, claiming title to said lots 1 and 5, and insisting that he held the title to the disputed strip of land, and that same was included within the area of said lots, and that the lands of complainants did not bound on the Atlantic Ocean. The answer admitted the acts of cutting growth upon the strip, etc., and declared his intention to proceed in doing such acts, claiming his right to do so.

An examiner was duly appointed to take the testimony of the parties, and subsequent to such appointment an order was made by the court, consented to by the parties, dismissing the bill as to all of the defendants except defendant Willingham, without prejudice to their rights.   Testimony was taken, and the cause brought on for final hearing, upon the bill as amended, the answer of defendant Willingham, and the evidence taken before the examiner.

Certain facts were stipulated by the parties before the examiner, as follows: That the lands described in the bill were patented by the United States in due form during the year 1880 and subsequent years, based upon the Williams survey made in 1870, and that complainants and defendant derived title to and were owners of the lands claimed by each through these patents, and dispensed with the necessity of bringing

in any evidence as to such titles; that actual possession was taken of the disputed strip of land by defendant after the commencement of this suit and service of subpœna upon him, and the acts of clearing the growth, etc., were done by him after that time.

[1-4] The testimony, and it is voluminous, was confined to the re-establishment of the range line between ranges 42 and 43. That line is the western boundary of section 30, township 49 south, range 43 east, and upon its location depends the decision whether the strip of land in dispute, 496 feet wide, is part of lots 2 and 4 and the west half of the southwest quarter of said section, or lots 1 and 5 in said section. The complainants affirm this fact; the defendant denies it. In other words, the complainants contend that the true location of this range line should be 496 feet east of where the defendant claims it to be. To maintain the issue on their part, the complainants produce two engineers, with the survey made by them and the map made in conformity to survey and the field notes made by them. The defendant introduced some six surveyors on his behalf. Of course the number of surveyors introduced on behalf of either party is not a governing factor, but it is the cogency of their reasons given for their acts which the court will consider in arriving at the weight to be given the testimony.

In addition to the witnesses, the field notes of M. A. Williams, the deputy United States surveyor, and the other surveyors measuring the lines, were filed in evidence. All the surveyors except one agree on Bonnett Slough as the place where the survey of this line should start; and, applying the rule of law governing such cases, I am of opinion that that was the correct point to start the survey. One set of surveyors commenced the line at a wooden post in said slough, and the other at an iron pipe in said slough. The field notes of the deputy United States surveyor calls for about the middle of the slough as the point of beginning. The difference between the parties arises from the location of the southwest corner of section 30 of township 49 south, range 43 east. Now, as I understand the law, the calls in field notes of courses and distances must give way to the calls for natural objects. Bonnett Slough is such a call, and must prevail over the calls in the field notes for measurements. The wisdom of this rule is shown in the instant case. I do not think the measure of the lines by any two of the surveyors running the lines agree, except where the two were making the survey together. New River Sound was called for in Williams' field notes as the northeast corner of section 36, township 49 south, range 42 east; i. e., "corner in edge of river." The surveyors introduced on behalf of the defendant construe this to mean New River Sound, and I am persuaded they are correct in this. The government field notes call for this point, and the plat of section 36 in township 49 south, range 42 east, made from the field notes, show it.

Now the contention of complainants is that from Bonnett Slough the line should run north, and in order for the line to touch New River Sound at the point shown on the government plat the line would have to deviate west of north. Granted that the rules governing surveyors of government land are required to run range lines due north and south, yet if the surveyor does not do this, as I understand the law,

when it comes to re-establishing the lines, they are to be run as the surveyor ran them at the time of making his survey, and not what he ought to have done. And so strict is this rule that not even the government can change the lines to the detriment of private interests. If the range line contended for by complainants should be established as the range line run by Williams, the call for the natural point corner in edge of the river must be ignored. It is true that taking this point as the true one compels the surveyor to ignore the call for striking New River Sound 45 chains north of the beginning point, and to a large extent, if not entirely, obliterates lot 8 in section 25, township 49 south, range 42 east; but it seems to me, under all the evidence in the case, that the point on New River Sound must be taken as the northeast corner of section 36, township 49 south, range 42 east. The corner being more important in my judgment, more care would be ordinarily taken by a surveyor to fix it than minor points in the line.

This fixes the southwest corner of section 30, township 49 south, range 42 east, and fixes the range line as contended for by the defendant. But it must be borne in mind that in this issue the complainants have the laboring oar, and must by preponderance of the evidence show their contention is correct. This I cannot find from all the evidence. The evidence is so voluminous that I have not attempted any detailed discussion of it. Time and opportunity do not permit it.

A decree will be entered, finding the equities with the defendant, and dismissing complainants' bill, at the cost of the complainants.