CASSANDRA M. ADDIS, a widow, v. OGDEN MARTIN HOAGLAND, etc.

8 So. (2nd) 655                                    Division A
June 9, 1942                    Rehearing Denied June 23, 1942

Sherman T. Taylor and J. P. Marchant, for appellant.

H. C. Crittenden, for appellee.

PER CURIAM:

Plaintiff, appellant here, brought her suit to quiet title to a tract of land, showing her title to be deraigned through William T. Whitledge, who received a patent to Gov. Lot 2, Sec. 18, Tp. 28 S, Range 26 E, October 30, 1888. Defendant is the owner of Lot 1, of adjoining Sec. 19, through mesne conveyances from Louvenia Neil, widow, who received a patent to the same June 30, 1884. In defending against the bill, defendant asserted that plaintiff had no right to the lands because they were a part of Lot 1, Sec. 19, and hence owned by him; but that in any event, he held whatever title plaintiff or her predecessors in title might have had through adverse possession. This appeal is from a decree dismissing the bill on final hearing, finding title to the land to be in defendant.

The tract of land, comprising about five acres, the subject of this litigation is shown on the Federal Plat of Survey to be a peninsula, jutting out into Lake Cannon, located within the dimensions of the NE¼, Sec. 19, Tp. 28 S. Range 26 E, near Winter Haven, Florida. (See diagram.)

Scale: 40 Chs = 1"

It is shown by the record that although this tract lies physically within the geographical dimensions of Sec. 19, the section line between Sections 18 and 19

was never run across this peninsula. To the contrary, it is shown that in surveying the lands, the boundary between the two sections was actually run by traversing the meander line around Lake Cannon. Thus, on the Federal Plat of Survey, the tract in controversy is shown as a part of Gov. Lot 2, Sec. 18, although it extends out into that part of Lake Cannon within the dimensions of Sec. 19. A projecting point of Lot 1, Sec. 19 is opposite the peninsula of Lot 2, Sec. 18.

The immediate question is whether the land is a part of Lot 2, Sec. 18 or of Lot 1, Sec. 19. Though the Federal Plat of Survey exhibited herein shows the land to be in the form of a peninsula on the northern side of an hour-glass shaped lake, Lake Cannon, it appears from the record that at the present time the northern and southern peninsulas have so come together as to form an isthmus and make two lakes out of what was formerly Lake Cannon. The western one is called Lake Cannon, the eastern one, Lake Mirror.

There is a canal at about the center of this isthmus joining Lakes Cannon and Mirror. Plaintiff claims all the land from the projection of the southeastern section line of Sec. 18 south to this canal. Defendant claims the same point of land. These claims are not complicated with any allegation of accretion to what is admittedly land of either party or his predecessors. The question, then, resolves into a determination of the extent of the grants made by the Government to the original patentees of Lot 1, Sec. 19 and Lot 2, Sec. 18.

One determination of the extent of the patent to Lot 2, Sec. 18 has already been made by the patenting government itself. On the application of one William

H. Hamilton for homestead entry to the tract, the General Land Office of the Department of the Interior, June 15, 1926, ruled that the tract here litigated was a part of Lot 2, Sec. 18, and had been conveyed with the patent covering that Lot, and thus was no longer public land.

Were this not in itself conclusive, there are other facts which seem to make it so. No section line was actually run across the southern peninsula tip of Lot 2, Sec. 18 when the original survey was made. The only boundary between the sections shown to have actually been run by the surveyor and platted by the Federal Government is the meander line of Lake Cannon.

It is true, as asserted by defendant, that the surveying rules (43 U.S.C.A. Sec. 751, et seq.) require section lines to be run in straight parallel lines. They also require, "No lot should be partly in two sections." Clark, Surveying and Boundaries (2nd ed. 1939) Secs. 147, 148 and 150. These are the rules governing survey, but where the surveyor does not follow the rules in making his survey, ". . . in re-establishing the lines, they are to be run as he ran them when making his survey and not as he ought to have run them." Galt v. Willingham, 300 F. 761 (U.S.D.C. Fla.). The tract of land here involved was originally surveyed as a part of and included in Lot 2 of Sec. 18 and that boundary must be taken as the true original boundary. See also: Miller v. White, 23 Fla. 301, 2 So. 614; Watrous v. Morrison, 33 Fla. 261, 14 So. 805, 39 Am. St. Rep. 139; Kirch v. Persinger, 87 Fla. 364, 100 So. 166; Kelsey v. Lake Childs Co., 93 Fla. 743, 112 So. 887. The case of Lord v. Curry, 71 Fla. 68, 71 So. 21,

presented entirely different facts and may be clearly distinguished from the one at bar.

It is necessary now to determine whether defendant acquired title to the land by adverse possession, plaintiff's legal title being the one properly including the tract in question. Considerable testimony was taken on this question, some of which was undisputed.

The following are facts established in the record beyond controversy: plaintiff received a partial interest in the tract which her husband purchased in 1926, but did not obtain the entire title until 1940; her deceased husband started buying up the legal title to the land when he, an abstractor, found the boundary question settled above in the public records; plaintiff has no claim in equity or in possession other than the bare legal title deraigning from the original patentee of Lot 2, Sec. 18; Plaintiff's predecessors in title had, in 1920, platted Lot 2, Sec. 18, along with other lots, to form a subdivision, and although the plat showed the tract here involved, south of the section line between sections 18 and 19, the plat was limited to and bounded by that section line; there is shown no effort made to convey, plat or otherwise dispose of the lands here involved by plaintiff's predecessors in title, although they had held the title since the patent was granted, until plaintiff's husband approached them asking for the partial interest in the disputed land conveyed in 1926.

Defendant took title to Lot 1, Sec. 19, deraigning from the original patentee of that lot March 17, 1923; defendant paid taxes on the property here involved for 17 years, with the exception of City taxes since 1932—it appearing that there has been considerable litigation as to whether the property is properly a

part of the City of Winter Haven and subject to city taxation; defendant granted the City authority to build a road over the tract, and through other lands of his; this road was built about 1926; defendant had the tract listed for sale with several realtors and had sale signs on the land itself.

From the statement of undisputable facts above has been purposely omitted reference to the fence defendant built, over which there is much controversy. It is not contested that at the time defendant took title to Lot 1, Sec. 19, there was a fence spanning the peninsula in controversy from lake to lake, approximately along the section line between sections 18 and 19, had that line been officially run. The fence had been built by one Branch who owned lands to the north. It is also beyond question that about the time the road referred to was built, defendant constructed an entirely new fence at a cost of $150. There is much conflict as to the duration of the fence as an effective enclosure, but there is testimony that it was such as late as 1936. There is testimony that defendant's predecessors in title had claimed ownership of the tract, up to the old fence, and had paid taxes on it and had performed proprietary acts in clearing it and posting it for sale.

From all the facts recited above—the apparent relinquishment of the tract by the former owners of Lot 2, Sec. 18 by their plat made of that lot; the long-standing claim of title by defendant and his predecessors in title; his, and their payment of taxes on the property; defendant's acts of proprietorship in granting the easement for the road and offering the land for sale; the long abeyance from asserting any claim by plaintiff (although laches are not pleaded);

and the construction and maintenance of the fence completely enclosing the north side of the land (the other boundaries being enclosed by water) for at least the statutory period—defendant appears to have sustained his allegation of adverse possession.

The fact that defendant's deed under which he claimed the tract did not describe the tract does not destroy his claim. Goodno v. South Florida Farms Co., 95 Fla. 90, 116 So. 23. The deeds granting plaintiff and her deceased husband title to the tract were therefore void as to the defendant in possession. Morris v. McCaskill Inv. Co., 92 Fla. 1045, 118 So. 490.

The fact that defendant has not paid city taxes to date, without considering the validity of his reasons for not paying them, does not invoke the provisions of Chapter 19253, Acts 1939, for defendant's adverse possession had ripened into title prior to the passage and effective date of that Act, and in such a case, is expressly excluded from the terms of the Act.

It should be mentioned that plaintiff moved to strike much of the testimony as immaterial, irrelevant or incompetent. The testimony having been taken before a special master who made no rulings on objections to questions, plaintiff was seeking to invoke the provisions of Sec. 53, 1931 Chancery Act. The chancellor, in the final decree, ruled that the motion was denied, "the Court having considered only relevant testimony in reaching its decision herein, and having rejected all irrelevant, immaterial and incompetent evidence in reaching its conclusion." Error, if any, in rulings on the testimony is harmless in this case for there is adequate competent testimony in the record to sustain the final decree which is not

702

shown to be erroneous.   See Holmberg v. Hardee, 90 Fla. 787, 108 So. 211.

The decree appealed from is therefore—

Affirmed.

BROWN, C. J., WHITFIELD, BUFORD, and ADAMS, JJ., concur.