109 So.2d 176 (1959)
Alfonso Ray LOPEZ et al., Appellants,
v.
Duval M. SMITH et al., Appellees.
No. 575.
District Court of Appeal of Florida. Second District.
February 20, 1959.
*177 Charles H. Ross and Paul Game, Tampa, for appellants.
Whitaker Brothers, Tampa, and Hall, Hartwell & Douglass, Tallahassee, for appellees, Tom Whitaker, Duval M. Smith, May P. Smith, and David M. Schwartz.
Robert W. Patton, Robert T. Mann, Gordon L. Gibbons, Thomas Alexander, and Arthur A. Simpson, Tampa, for appellee, Scenic Isles, Inc.
KANNER, Chief Judge.
Appellants, in the court below, sought to quiet title to certain islands or parts of islands which they claim to be contained within the boundaries of three fractional government lots to which they hold title. The chancellor dismissed the complaint on the ground that it presented no justiciable issue and failed to state a cause of action. Appellants then filed motion for rehearing and for leave to amend. These were denied by the court on the basis that the controlling legal principles upon which the dismissal was predicated are immutable and that they would negate appellants' claim fundamentally.
Title under which appellants lay claim to the subject lots was deraigned from government patent no. 4, dated August 9, 1856, conveying to the State of Florida government lots one through eight in section 12, township 32 south, range 18 east. These are fractional lots shown by the original government survey as bordering on Little Manatee River, which flows from east to west through section 12. Lots one through four, located in the northern part of section 12, are shown to border the river on the south; while lots five and six, located in the southern part of the section, are shown to border the river on the north.
Government lots two, five and six form the basis for this dispute, along with islands or portions of islands which would fall within these lots if they are extended to bound on the main branch of the Little Manatee River. This river has three branches in the eastern part of section 12 where it enters the disputed lands, with only two branches on the western side where the river emerges from these lands. The main branch is the middle branch in the eastern and central portions of section 12 and is the northern branch in the western part of the section. Many islands lie within and between the branches of the river. There are two meander lines, one for the right bank or north branch of the river and one for the left bank or south branch.
Appellants in their complaint alleged that the Trustees of the Internal Improvement Fund had advertised the sale to the adjacent upland owners, for objections only, of certain submerged lands, and that the lands were sold to one of the appellees, Scenic Isles, Inc., which claimed to be the owner of Goat Island, although this island in fact belonged to certain of the appellants due to its location largely within section 12. They further alleged that appellants' objections filed to the sale were overruled; that appellees had recorded a map entitled "Ruskin Keys", which included Goat Island; that appellees deraigned title from government patent no. 33, dated November 26, 1884, conveying to the State of Florida all the unsurveyed part of township 32 south, range 18 east, with certain exceptions not here applicable; that appellees had no right or title in the part of Goat Island lying within section 12; that the branches of the river have not been officially named and that it is misleading to designate them as "North Branch" and "South Branch." It was also asserted that the state had no title to the lands in controversy when it deeded the unsurveyed lands to appellees' original predecessor in title; that for many years the tax assessor of Hillsborough County assessed the government lots owned by appellants according to the acreage originally computed for these lots; and that these taxes were paid by appellants and their predecessors in title. It was alleged that the waters surrounding the islands were and are non-navigable except *178 for the main branch of the Little Manatee River. There are also many other allegations, among which are those charging variations in the acreage of the several lots, changes in the course of the river, and fictitious lines with reference to the shapes and sizes of the islands shown on the original plat. The complaint comprises 39 pages with 58 numbered paragraphs and numerous exhibits.
The chancellor's action in dismissing the complaint was based on the general principle that a meander line is not a boundary. He concluded that the Little Manatee River in all its parts in section 12 was and is navigable and that the fractional lots with which this litigation is concerned are bounded by the branches of the river rather than by its main channel or by the meander lines.
The problem which emerges from the allegations of the complaint is location of the boundary lines for government lots two, five, and six in section 12. Within this problem are two basic controlling questions, first, whether the meander lines, or whether the ordinary high water marks delineate the boundaries, and, second, whether all of the branches of the Little Manatee River are navigable. If the main banks or the meander lines of the Little Manatee River, as described above, comprise the boundaries of appellants' lots two, five, and six, then the islands or parts of islands in question would fall within these lots. If, instead, as the trial court held, the ordinary high water mark of that body of water is the boundary line and the north and south branches are navigable, then the islands or parts of islands would not be encompassed within the boundaries of appellants' lots.
It is a general rule supported by the undisputed weight of authority that a meander line is not a boundary. Generally, the ordinary high water mark of lands located upon navigable waters delineates the boundary. This high water mark may be above or below the meander line of navigable waters. Clark on Surveying and Boundaries, Second Edition, section 201, p. 209; 11 C.J.S. Boundaries § 30b, p. 573; Brickell v. Trammell, 1919, 77 Fla. 544, 82 So. 221; Martin v. Busch, 1927, 93 Fla. 535, 112 So. 274, and Lord v. Curry, 1916, 71 Fla. 68, 71 So. 21. These principles are not without disqualification, however. A meander line may constitute a boundary where so intended, or where the discrepancies between the meander line and the ordinary high water line leave an excess of unsurveyed land so great as to clearly and palpably indicate fraud or mistake. 11 C.J.S. Boundaries § 30b, p. 574; Clark on Surveying and Boundaries, Second Edition, section 210, p. 215; and see Martin v. Busch, supra and Lord v. Curry, supra.
There remains to be considered, then, the question of navigability of the waters which surround the islands or parts of islands in question. All lands and waters bordering on navigable waters and lying between ordinary low and high water marks fall within the reach of the definition determining navigability as set forth by the court in the case of Clement v. Watson, 1912, 63 Fla. 109, 58 So. 25. The factor which determines whether or not water is navigable is its capacity for navigation, not its usage for that purpose. The Florida Supreme Court said in Broward v. Mabry, 1909, 58 Fla. 398, 50 So. 826, at page 830:
"Where a stream or body of water is permanent in character, and in its ordinary natural state is in fact navigable for useful purposes, and is of sufficient size and so situated and conditioned that it may be used for purposes common to the public in the locality where it is located, such water may be regarded as being of a public character, and the title to the land thereunder, including the shore or space between ordinary high and low water marks, when not included in the valid terms of a grant or conveyance to private ownership, is held by the state in its sovereign capacity in trust for the *179 lawful uses of all the people of the state in the water and the land, subject to lawful governmental regulation of such uses. Capacity for navigation, not usage for that purpose, determines the navigable character of waters with reference to the ownership and uses of the land covered by the water. Grants and conveyances of land bordering on navigable waters carry title in general to ordinary high-water mark when a valid contrary intent does not appear."
In Martin v. Busch, 1927, 93 Fla. 535, 112 So. 274, the court further said, quoting from page 283:
"The navigable waters include lakes, rivers, bays, or harbors, and all waters capable of practical navigation for useful purposes, whether affected by tides or not, and whether the water is navigable or not in all its parts towards the outside lines or elsewhere, or whether the waters are navigable during the entire year or not."
Navigable waters do not extend, however, to all waters merely because they are affected by the tides but which are not in fact capable of navigation for useful public purposes. In City of Tarpon Springs v. Smith, 1921, 81 Fla. 479, 88 So. 613, the Supreme Court said, at page 619:
"While the navigable waters in the state and the lands under such waters including the shore or space between high and low water marks are held by the state for the purpose of navigation and other public uses, subject to lawful governmental regulation, yet this rule is applicable only to such waters as by reason of their size, depth, and other conditions are in fact capable of navigation for useful public purposes. Waters are not under our law regarded as navigable merely because they are affected by the tides. The shore of navigable waters which the sovereign holds for public uses is the land that borders on navigable waters and lies between ordinary high and ordinary low water mark. This does not include lands that do not immediately border on the navigable waters, and that are covered by water not capable of navigation for useful public purposes, such as mud flats, shallow inlets, and low lands covered more or less by water permanently or at intervals, where the waters thereon are not in their ordinary state useful for public navigation."
See also Clement v. Watson, 1912, 63 Fla. 109, 58 So. 25.
The complaint contained allegations to the effect that the north and south branches of the Little Manatee River were and are non-navigable in fact and that the main channel is the only navigable channel. The cause was heard on motions to dismiss on grounds that the complaint failed to state a cause of action or grounds upon which equitable relief could be granted. In testing the sufficiency of a complaint, a motion to dismiss, when presented to a chancellor for ruling, admits for purposes of the motion all well pleaded facts and allegations of the complaint. The motion should be denied if the complaint states any grounds for equitable relief. Binz v. Helvetia Florida Enterprises, Fla.App. 1958, 104 So.2d 124; Triple E Development Co. v. Floridagold Citrus Corp., Fla. 1951, 51 So.2d 435; and Lykes Bros. v. Board of Com'rs of Everglades Drainage Dist., Fla. 1949, 41 So.2d 898.
Among the many exhibits attached to the complaint, maps filed show the two branches of the river in the western part of section 12 and the three branches in the middle and eastern part of the section where the disputed lands are located. In conformity to this, the government plat of township 32 south, range 18 east, appellants' exhibit L, based on the original Randolph and Reid surveys, shows the same general location of the branches except that the meander lines and the river banks delineated by them do not in instances correspond with the actual location of the *180 river banks as shown by the other exhibits. Rather there are indications of varying distances between the meander lines as shown by the original government plat and the actual location of the river banks as shown by the other exhibits, all of which are substantially in accord. The plat of the government survey and the field notes, exhibit K, indicate the Little Manatee River to be a meandered body of water. The field notes for the western line of section 12 show two branches of the river designated as the north and south branches, with the western line of the section crossing what appears to be at present Goat Island. Exhibit M, a U.S. Coast Survey of the area concerned, dated 1875, shows the branches of the river with its channels and islands; and exhibits M and N indicate soundings made in the river branches.
There has been no trial. The question of navigability is a controlling element with reference to the boundaries here concerned, and the chancellor did not have the benefit of testimony, expert or otherwise, in this regard. There was before the chancellor in the record upon which his dismissal of the cause with prejudice was predicated, only the appellants' complaint with attached exhibits and the appellees' motions to dismiss, with their single exhibit in the form of a map of Ruskin Keys. The controversy involves technical considerations such as would be required in the interpretation, among other things, of navigational charts, surveying and boundaries, and matters relating to public lands and riparian rights. It may be said that the exhibits show that the Little Manatee River is navigable in certain areas, but it cannot be said that they incontrovertibly establish navigability in all its parts as they concern the areas of land involved in this litigation. Therefore, although it may be said that there are indications of navigability from the exhibits, it cannot be held that the allegations of the complaint to the effect that the channels and branches involved are not navigable have been completely negated and overcome by the exhibits. The complaint was sufficient to withstand the motions to dismiss.
The cause is therefore reversed with directions that the complaint be reinstated and that a time be fixed by the chancellor for the filing of answers; and for such other proceedings not inconsistent with the views herein expressed.
Reversed.
ALLEN and SHANNON, JJ., concur.