SOUTH FLORIDA FARMS COMPANY, A CORPORATION, *Plaintiff in Error*, v. E. E. GOODNO, *Defendant in Error*.

Opinion filed November 15, 1922.

Petition for rehearing denied December 15, 1922.

1. A section of land, as a legal subdivision under the Congressional rules of survey, is a mile square, anad usually contains 640 acres. When a section is not whole or regular in its contents, that is where it does not contain approximately 640 acres, it may properly be called a "fractional section."

2. Where because of the presence of a permanent body of water which is approximately meandered in making the survey, there is a deficiency in the area of a section, it is referred to as a "fractional section." In such cases the water lines and not the meander lines may control as boundaries even though there may be some land between the meaander line and the water line.

3. Where a grantee's boundary lines make him a riparian owner, the nature and extent of such grantee's title to lands under the water to which his boundaries extend, are controlled by the laws of the State.

4. Where the area to constitute a whole or regular section of land is in place, but, because a portion of the land is, at the time of the survey, temporarily flooded, or is of such nature that it cannot then be readily surveyed, or where the surveyors or officials negligently or purposely do not survey such portion, the survey may subsequently be completed. Meanwhile the surveyed portion is referred to as a "fractional section;" and in such case a conveyance of the "fractional section" is, in general, controlled in its boundaries by the survey and meander lines.

5. Where a fractional section is patented in accordance with the plat of survey, and the meander lines of the survey do not ap-

proximately conform to a permanent water line that is referred to in the survey field notes and plats, the conveyance covers only the surveyed land in the section.

6. Where public lands are patented "according to the official plat of the survey returned to the General Land Office by the Surveyor General," the notes, lines, landmarks and other particulars appearing upon the plat become as much a part of the patent, and are as much to be considered in determining what it is intended to include, as if they were set forth in it.

7. The Swamp Land Act of 1850 in itself passed to the State only an inchoate title, and not until the demands are listed and patented under the act can the title become perfect.

8. The rule of general application is that where a patent to public land refers to the field notes and plats of an official survey, which field notes and plats show that the land is bounded by a permanent body of water, and that in making the official survey the waters were in fact faithfully meandered, the water line, and not the meander line is in general the boundary.

9. Where an official survey meanders not a permanent body of water, but low marsh or similar lands that are adjacent to other lands being surveyed, the meander line is the boundary.

10. Where a patent covers "the whole of fractional section twenty-eight" * *. * in a stated township and range "according to the official plats of survey," and the official plats of survey referred to in the patent and the approved "list and plats of the land" for which the patent was issued to the State under the Swamp Land Act of 1850, show that said fractional section 28 contains 27.50 acres, and the plats of survey show that the meander line was run with reference to marshy lands and not with reference to a permanent body of water, the patent covers only the 27.50 acres and not the entire unsurveyed section, even though there is a navigable stream running through another portion of unsurveyed section 28; and a subsequent patent to the State covering "all of unsurveyed section 28" of the same township and range includes that portion of the land in section 28 that is

not embraced in the 27.50 acres covered by the prior patent. A conveyance by the State of "the whole of fractional section 28" covers only the 27.50 acres that had been patented to the State as "the whole of fractional section 28."

A Writ of Error to the Circuit Court for DeSoto County, George W. Whitehurst, Judge.

Reversed.

*Leitner & Leitner,* for Plaintiff in Error;

*Treadwell & Treadwell,* for Defendant in Error.

### STATEMENT

The following is a portion of the official plat of the survey of Township 42 South of Range 30 East of the Principal Meredian, covering sections 28, 29 and 30 of said township, showing the south and west boundaries of Section 30 and the subdivision meanders survey lines in scetions 28 and 30 that were run in 1850 and 1870, the plat being certified by the Surveyor General as being "strictly conformable to the field notes of the survey thereof on file in this office which have been examined and approved."

"No. 12.

"A list of Swamp and Overflowed Lands selected as inuring to the State of Florida under the provisions of the Act of Congress approved September 28, 1850, Revised Statutes, section 2479 in the District of lands subject to sale at Gainesville, formerly Tampa, Florida.

SWAMP LANDS.

| Parts of Sections | Section | Township | Range | Surveyed Area Acres.Hdths. |
|---|---|---|---|---|
| All of fractional.. | 28 | 42 | 30 | 27.50 |
| All of fractional.. | 30 | 42 | 30 | 233.90 |

DEPARTMENT OF THE INTERIOR,
GENERAL LAND OFFICE
October 25, 1879.

Respectfully submitted for approval.

J. M. ARMSTRONG,
Acting Commissioner.

DEPARTMENT OF THE INTERIOR  E. M. M.
Washington, D. C., Nov. 8, 1879.

The foregoing List of Swamp Selections is hereby approved, subject to any legal rights that may exist to any of the lands therein described.

C. SCHURZ,
Secretary.

## SWAMP LANDS

No. 135.

A list of Swamp and Overflow Lands selected as inuring to the State of Florida, under the provisions of the Act of Congress approved September 28, 1850, (9 Stat., 519) in the District of Lands subject to sale at Gainesville, Florida, containing 2,990.00 acres. List 135.

## LIST OF SWAMP AND OVERFLOW LANDS

District of Gainesville, Florida, Tallahassee Meredian.

| Parts of Sections | Sec. | T. S. | R. E. | Acres Unsurveyed Land |
|---|---|---|---|---|
| Unsurveyed .... | 28 | 42 | 30 | 620.00 |
| Unsurveyed .... | 30 | 42 | 30 | 410.00 |

"Division of Swamp Lands,
Washington, D. C., January 15, 1909.

This certifies that the lands embraced in this list, Florida Swamp Land List No. 135, containing an estimated area of two thousand nine hundred and ninety (2,990) acres were reported to this office as swamp land July 14, 1886; that all of the surveyed lands in the township, except section 16, were patented to the State as swamp land, February 14, 1880; that the unsurveyed lands included in this list are designated on the plat as an "impracticable saw-grass marsh,' and that the field-notes of survey, made in 1871, show the land to be unsurveyable and of the character indicated on the plat; and that no claim ad-

verse to that of the state to any of said lands appears of record.

SAM'L W. SNOW,
Examiner.

Approved:
I. R. CONWELL,
Acting Chief of Division.''

"Department of the Interior,
General Land Office,
Washington, D. C.,
January 18, 1909.

The tracts of land embraced in this list, Florida Swamp List No. 135, containing two thousand, nine hundred and ninety (2,990) acres, are decided, subject to the approval of the Secretary of the Interior to be swamp lands and to inure to the State under the swamp land grant.

FRED DENNETT,
Commissioner

Department of the Interior,
Office of the Secretary,
Washington, D. C., January 18, 1909.

This list, Florida Swamp Land List No. 135, containing two thousand, nine hundred and ninety (2,990) acres, is hereby approved subject to any valid adverse rights that may exist to the tracts therein described.

FRANK PIERCE,
First Assistant Secretary.''

The following certificate of the Commissioner of Agriculture was offered in evidence by the plaintiff, but excluded on motion of the defendant:

"I, W. A. McRae, Commissioner of Agriculture of the State of Florida, hereby certify under my hand and official seal that I am the legal custodian of the records of deeds

and papers pertaining to the public lands of the State of Florida, and all the patents and approved lists issued by the United States of America to the State of Florida, for all lands granted to the State of Florida under the several Acts of Congress, and also custodian of the record of the deeds of the Trustees of the Internal Improvement Fund of the State of Florida, and that as such Commissioner, I certify that the surveyed parts of Section 28 and Section 30 in Township 42 South of Range 30 East, were and are known as fractional sections 28 and 30 embrace 261.40 acres; that said fractional sections 28 and fractional section 30, were patented to the State of Florida under Patent No. 20, Tampa District, bearing date of February 14th, A. D. 1880; that this land which is known as fractional section 28 and fractional section 30 was deeded by the trustees of the Internal Improvement Fund of the State of Florida to the Florida Land and Improvement Company on February 3rd, 1883 in Deed No. 11,664; and

"I further certify under my hand and official seal that the unsurveyed parts of said sections 28 and 30 at that time, to-wit: February 3rd, 1883, had not been patented by the United States of America to the State of Florida; that the said unsurveyed parts of said sections 28 and 30, containing approximately 1,018.60 acres, and were patented on June 21st, 1909, by the United States of America to the State of Florida, under Patent No. 164, Gainesville District; that the Trustees of the Internal Improvement Fund of the State of Florida, on December 28th, 1904, conveyed the said unsurveyed parts of said sections 28 and 30 to John W. Henderson, Jennie H. Murphree and Flora A. Waldo, heirs of John A. Henderson deceased.

"I Further Certify under my hand and official seal that said records show that fractional section 28 and fractional section 30 are not and were not the same land as the

unsurveyed parts of said section 28 and section 30, and that the Trustees of the Internal Improvement Fund of the State of Florida, did not convey or attempt to convey to the said Henderson heirs the same land or any part thereof which they had previously conveyed as above mentioned to the Florida Land and Improvement Company.

IN TESTIMONY WHEREOF I have hereunto set my hand officially, and have caused to be affixed hereto the seal of the Department of Agriculture of the State of Florida, at the Capitol, in the City of Tallahassee, on this, the 27th day of April, A. D. 1920.

(SEAL)                          W. A. McRAE,
Commissioner of Agriculture of the State of Florida.''

Section 2724 Revised General Statutes, 1920, under which the above certificate was offered, was amended and enlarged in its scope by Chapter 7381,Acts of 1917, after the decision of this court in Groover v. Coffee, 19 Fla. 61.

WHITFIELD, J.—In an action of ejectment brought by the South Florida Farms Company against Goodno to recover ''all of Section Twenty-eight (28) Township Forty-two (42) South, Range Thirty (30) East, except a surveyed portion thereof, containing 27.50 acres, in the northeast corner thereof according to and as shown by Government plat, and all of Section Thirty (30) in Township Forty-two (42) South, Range Thirty (30) East, except Government Lots One (1), Two (2) and Three (3), and S. ½ of S. E. ¼ thereof as shown by Government Plat, containing about 950.40 acres,'' there was judgment for the defendant, and the plaintiff took writ of error.

It appears that all the land in Sections 28 and 30 of Township 42 South of Range 30 East, was swamp and overflowed land that was granted to the state by the Act of

Congress, approved September 28th, 1850. It also appears that Goodno claims under a patent issued to the State on February 14, 1880, covering "the whole of fractional sections twenty-eight * and thirty * in township forty-two south of range thirty east * according to the official plats of survey of the said lands, returned to the general land office by the surveyor general."

The Act of Congress granting swamp and overflowed lands to the States, is not a grant of such lands by legal subdivisions. It grants "the whole of those swamp and overflowed lands, made unfit thereby for cultivation." The Act requires the Secretary of the Treasury to transmit to the Governor of the State accurate lists and plats of the lands granted, and upon request to issue patents therefor.

Where the *whole of a township or of a section is* "swamp and overflowed land" that is "wet and unfit for cultivation," within the meaning of the Act of Congress of September 28, 1850, a subdivisional survey of the township or section would not be necessary to enable the Secretary of the Interior to determine whether "the greater part of" the township or section is "wet and unfit for cultivation," so as to be covered by the grant; but in such cases the lists and plats of the lands may be made by reference to surveyed lines and their projected extensions or to natural boundaries, and patents may be issued for the lands that are within the grant according to such lists and plats whether the lands be surveyed or unsurveyed. See 19 L. D. 251, 24 L. D. 147; 8 L. D. 65 and 369.

A section of land, as a legal subdivision under the Congressional rules of survey, is a mile square, and usually contains 640 acrs. When a section is not whole or regular in its contents, that is where it does not contain approximately 640 acres, it may properly be called a "fractional

section." Where because of the presence of a permanent
body of water which is approximately meandered in mak-
ing the survey, there is a deficiency in the area of a section,
it is referred to as a "fractional section." In such cases
the water lines and not the meander lines may control as
boundaries even though there may be some land between
the meander line and the water line. See Railroad Co. v.
Schurmeir, 7 Wall. (U. S.) 272; Producers' Oil Co. v.
Hanzen, 238 U. S. 325, 35 Sup. Ct. Rep. 755; Greene v.
United States, 274 Fed. Rep. 145; Lane v. United States,
274 Fed. Rep. 290; Mitchell v. Smale, 140 U. S. 406, 11 Sup.
Ct. Rep. 819, 840; 9 C. J. 190. And where the grantee's
boundary lines make him a riparian owner, the nature and
extent of such grantee's title to lands under the water to
which his boundaries extend, are controlled by the laws of
the State. Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct.
Rep. 808, 838; Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct.
Rep. 548. In Florida a riparian owner upon navigab'e
waters takes to ordinary high water mark. Broward v.
Mabry, 58 Fla. 398, 50 South. Rep. 826; State ex rel. Ellis
v. Gerbing, 56 Fla. 603, 47 South. Rep. 353; Brickell v.
Trammell, 77 Fla. 544, 82 South. Rep. 221.

Where the area to constitute a whole or regular section
of land is in place, but, because a portion of the land is,
at the time of the survey, temporarily flooded, or is of such
a nature that it cannot then be readily surveyed, or where
the surveyors or officials negligently or purposely do not
survey such portion, the survey may subsequently be com-
pleted. Meanwhile the surveyed portion is referred to as
a "fractional section;" and in such case a conveyance of
the "fractional section" is, in general, controlled in its
boundaries by the survey and meander lines. Where a
fractional section is patented in accordance with the plat of
survey, and the meander lines of the survey do not approx-

imately conform to a permanent water line that is referred to in the survey field notes and plats, the conveyance covers only the surveyed land in the section. See 17 L. D. 355; Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. Rep. 988; Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. Rep. 124; French-Glenn Live Stock Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. Rep. 563; Lee Wilson & Co. v. United States, 245 U. S. 24; 38 Sup. Ct. Rep. 21; Jeems Bayou Hunting & Fishing Club v. United States, 274 Fed. Rep. 18; United States v. Lee Wilson & Co., 214 Fed. Rep. 630; Lord v. Curry, 71 Fla. 68, 71 South. Rep. 21.

Where public lands are patented ''according to the official plat of the survey returned to the General Land Office by the Surveyor General,'' the notes, lines, landmarks and other particulars appearing upon the plat become as much a part of the patent, and are as such to be considered in determining what it is intended to include, as if they were set forth in it. The Swamp Land Act of 1850 in itself passed to the State only an inchoate title, and not until the lands were listed and patented under the act could the title become perfect. Chapman & Dewey Lumber Co. v. St. Francis Levee Dist., 232 U. S. 186, 34 Sup. Ct. Rep. 297; Lee Wilson & Co. v. United States, 245 U. S. 24, 38 Sup. Ct. Rep. 21; Greene v. United States, 74 Fed. Rep. 145; Lee Wilson & Co. v. United States, 227 Fed. Rep. 827, 142 C. C. A. 351; United States v. Lee Wilson, 214 Fed. Rep. 630.

The rule of general application is that where a patent to public land refers to the field notes and plats of an official survey, which field notes and plats show that the land is bounded by a permanent body of water, and that in making the official survey the waters were in fact faithfully meandered, the water line, and not the meander line is in general the boundary. See St. Paul & P. R. Co. v. Schur-

meier, 7 Wall. (U. S.) 272, 19 L. Ed. 74; Lane v. United States, 274 Fed. Rep. 290, and authorities cited. 9 C. J. 189. But where an official survey meanders not a permanent body of water, but low marsh or similar lands that are adjacent to other lands being surveyed, the meander line is the boundary. See Lee Wilson & Co. v. United States, *supra;* Chapman & Dewey Lumber Co. v. St. Francis Levee Dist., *supra;* Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. Rep. 124; Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. Rep. 988; Producers' Oil Co. v. Hanzen, 238 U. S. 325, 25 Sup. Ct. Rep. 755; Scott v. Lattig, 227 U. S. 229, 33 Sup. Ct. Rep. 242; Jeems Bayou Hunting & Fishing Club v. United States, 274 Fed. Rep. 18; Moss v. Ramey, 239 U. S. 538, 35 Sup. Ct. Rep. 183; Security Land & Exploration Co. v. Burns, 87 Minn. 97, 91 N. W. Rep. 340; Chapman & Dewey Land Co. v. Bigelow, 77 Ark. 338, 92 S. W. Rep. 534; United States v. Lee Wilson, *supra.* See also Producers' Oil Co. v. Hanszen, 132 La. 691, 61 South. Rep. 754; Lord v. Curry, 71 Fla. 68, 71 South. Rep. 21; Producers' Oil Co. v. Hanszen, 238 U. S. 325, 35 Sup. Ct. Rep. 755; City of Tarpon Springs v. Smith, 81 Fla. 479, 88 South. Rep. 613; Gauthier v. Morrison, 232 U. S. 452, text 549, 58 L. Ed. 680, 34 Sup. Ct. Rep. 384; Security Land & Exploration Co. v. Burns, 193 U. S. 167, 24 Sup. Ct. Rep. 425; 9 C. J. 190. The survey controls. Stonewall Phosphate Co. v. Peyton, 39 Fla. 726, 23 South. Rep. 440.

The South Florida Farms Company claims under a patent issued June 21, 1909, covering "all of unsurveyed sections * Twenty-eight * and thirty, * township forty-two south of range thirty east," "according to the official plats of survey of the said lands returned to the General Land Office by the Surveyor General." The contention on which Goodno won in the trial court is that the patent of February 14, 1880, covering "the whole of

fractional sections" 28 and 30, T. 42 S. R. 30 E. "according to the official plats of survey of the said lands," conveyed to the State, and the State conveyed to its grantee, the entire contents of sections 28 and 30, the theory being that as the plat of survey shows that the northeast and the southeast corners of section 28 were located, and that a small triangular piece containing 27.50 acres in the northeast corner of section 28 was actually surveyed and platted, and that as the western line and the southern line of section 30 had been located and platted and that the south half of the southeast quarter of section 30 had been regularly surveyed and platted and lots 1, 2 and 3 having irregular north lines, but all in the south half of section 30, had been actually surveyed and platted, the conclusion asserted is that sections 28 and 30 were to be regarded as having been surveyed and that the complete legal title to the entire area in the two sections passed to the State under the description "the whole of fractional sections 28 and 30."

This view is not tenable when the field notes and plats of the survey show that the meander lines in sections 28 and 30 are not delineations of permanent bodies of water, but of an "impracticable sawgrass marsh" covering a relatively large area between the survey lines and the Caloosahatchee River, a very narrow stream that traverses the sections. It appars from the survey plat that only 27.50 acres in the northeast corner were actually and completely surveyed in section 28 and that only the south half of the southeast quarter containing supposedly 80 acres, and lots 1, 2 and 3, containing respectively 51.90, 55 and 44 acres, all in the south half of section 30, had been actually and completely surveyed in section 30. This left unsurveyed the greater portion of the two sections, or over 600 acres in section 28, and over 400 acres in section 30, all of which is marked "Impracticable sawgrass marsh," and

18—Vol. 84.

"Caloosahatchee River," and no survey lines are run through such "impracticable sawgrass marsh." None of the lines of sections 28 and 30 touch or even approximately reach the waters of the river, except the west line of section 30, being also a range line, which crosses the river. The first patent was confined to the fractional or surveyed portions of the sections 28 and 30 and the patent of June 21, 1909, covered "all of unsurveyed sections 28 and 30."

In Kean v. Calumet Canal & Improvement Co., 190 U. S. 452, 23 Sup. Ct. Rep. 651, the meander line was the water line. See French-Glenn Live Stock Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. Rep. 563; Broward v. Mabry, 58 Fla. 398, 50 South. Rep. 826.

The conclusion here reached does not conflict with sections 4803 and 4804 of the United States Compiled Statutes, since the survey was interrupted by a sawgrass marsh which is to be treated as land, and the survey was not interfered with by a water course or an Indian reservation or other external boundary of a fractional township. Niles v. Cedar Point Club, 175 U. S. 300, 20 Sup. Ct. Rep. 124.

The Act of Congress approved September 28, 1850, granting to the State "the whole of those swamp and overflowed lands made unfit thereby for cultivation, which shall remain unsold at the passage of this Act," provides in section 2 "that it shall be the duty of the Secretary of the Interior, as soon as may be practicable after the passage of the Act, to make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the Governor of the State, and at the request of said Governor, cause a patent to be issued to the State therefor; and on that patent, the fee simple to said lands shall vest in the said State."

The patent issued February 14, 1880, covered "the whole of fractional sections twenty-eight, twenty-nine and thirty

\* in township forty-two south of range thirty east \* according to the official plats of survey," and the approved "lists and plats of the land" for which the patent was issued to the State show that fractional section 28 contains 27.50 acres, and that fractional section 30 contains 233.90 acres. This acreage is verified by the aggregate acreage of all the detailed acreage in the several sections, fractional sections and lots within sections that are contained in the lands of the township that are covered by the approved lists on which the patent was issued under the Act of Congress and as further shown by the official plats of survey referred to by the patent itself. By the terms of the Act of Congress making the grant of swamp and overflowed lands, the patent is issued for the lands contained in the "list and plats of the lands." that are made out and transmitted by the Secretary of the Interior to the Governor of the State. And the patent by its terms covers the described lands containing a stated acreage "according to the official plats of survey of the said lands." Therefore the patent of February 14, 1880, covering "the whole of sections twenty-eight \* and thirty," "conveyed to the State" fractional sections 28 and 30 "according to the official plats of surveys" which show that fractional section 28 contains 27.50 acres, and that fractional section 30 contains 233.90 acres. This acreage, and no more was conveyed to the State by the patent of February 14, 1880. See Chapman & Dewey Lumber Co. v. St. Francis Levee District., *supra*.

The officers of the State conveyed to the defendant's predecessor in title "the whole of fractional sections 28, 30," which description of course embraced only the lands

covered by the similar description in the patent to the State as shown by the "list and plats of the lands," upon which under the granting Act of Congress the patent was issued, and to which the patent expressly referred for definiteness of the descriptions contained in the patent, such lists and plats being public records and showing by demonstration that "all of fractional section 28" contains 27.50 acres and that "all of fractional section 30" contains 233.90 acres.

The patent issued June 21, 1909, covered "all of unsurveyed sections    *    twenty-eight    *    thirty,    * township forty-two south of range thirty east    *    according to the official plats of survey of the said lands" etc., and the approved list of lands" for which under the Act of Congress the patent was issued to the State, shows that "unsurveyed" section 28 contains an estimated area of 620 acres and that "unsurveyed" section 30 contains an estimated area of 410 acres. This estimated acreage is verified by the aggregate of all the detailed areas of the different parcels of land as stated in the lists upon which the patent was issued.

The conveyance made by the State officials to the plaintiff's predecessors in title embraced "all unsurveyed sections 28, 30 T. 42 S. R. 30 E.," which description covered the area embraced in the patent under a similar description as made definite by the approved lists on which the patent of June 21, 1909, was issued, and by the official plats of survey to which the patent refers.

The conveyance made February 3, 1883 by the State officers to the defendant's predecessors in title covered only the lands embraced in the patent of February 14, 1880, viz: "the whole of fractional sections 28, 30" which did not include any lands except 27.50 acres in section 28, and lots 1, 2 and 3 and S. ½ of S. E. ¼ of section 30.

As the plaintiff, the South Florida Farms Company, claims under the patent covering the unsurveyed portions of sections 28 and 30, and as the defendant claims under the patent covering "the whole of fractional sections 28, 30" which do not cover the unsurveyed portions of the sections, the verdict and judgment for the defendant are erroneous, since the lands described in the declaration cover the unsurveyed portions of the section, to which the plaintiff shows title, and no superior right by adverse possession or otherwise of the defendant is established. See Miller v. White, 23 Fla. 301, 2 South. Rep. 614.

The title to the bed of the Caloosahatchee River, a navigable stream, is in the State by virtue of its sovereignty attained upon its admission into the Union in 1845; and lands under navigable waters in the State are not included in the Congressional Grant of Swamp and Overflowed lands in 1850. Broward v. Mabry, 58 Fla. 398, 50 South. Rep. 826; State *ex rel.* Ellis v. Gerbing, 56 Fla. 603, 47 South. Rep. 353; Scott v. Lattig, 227 U. S. 229, 33 Sup. Ct. Rep. 242. See also State *ex rel.* Kittell v .Jennings, 47 Fla. 307, 35 South. Rep. 986, as to lands granted to the State in 1845 for school purposes. No Spanish or other grant antedating the cession of the Floridas to the United States by Spain in 1819 is involved here.

Reversed.

TAYLOR AND WEST, J. J., AND JONES, Circuit Judge, concur.

BROWNE, C. J., dissents.

BROWNE, C. J.—Dissenting.

The determining question in this case is the construction to be placed on the terms "the whole of fractional section 28," and "the whole of fractional section 30," found in the United States Government patent to the State, and in the deed of conveyance from the Trustees of the Internal Improvement Fund, to the Florida Land and Improvement Company, from which Goodno deraigns his title.

The rule laid down by Congress for ascertaining the boundaries and contents of a "fractional township" is provided for in Section 4804, Vol. 5, U. S. Compiled Statutes, as follows: "The boundary lines actually run and marked in the surveys returned by the surveyor general shall be established as proper boundary lines, on the sections or subdivisions for which they are intended, and the length of such lines as returned shall be held and considered as a true length thereof, and the boundary lines which have not been actually run and marked, shall be ascertained by runing straight lines from the established corners to the opposite corresponding corners, but in those portions of the fractional townships where no such opposite corners have been or can be fixed the boundary lines shall be ascertained by running from the established corners due north and south or east and west, lines as the case may be, to the water course, Indian Boundary Line, or other external boundary of such fractional township."

It would seem proper to adopt this rule, in determining from the plat introduced in evidence, how many acres are embraced in "the whole of fractional section 28," and "the whole of fractional section 30."

A corner has been established by the United States government survey, and north and east lines have been partially surveyed and marked on the plat.

Applying the rule laid down by Congress to ascertain what is included in a "fractional township," we have only to run "from the established corners due north and south or east and west, lines as the case may be, to the water course, Indian Boundary Line, or other *external boundary* of the fractional sections," to find how many acres were conveyed by the words, "the whole of fractional section 28," and "the whole of fractional section 30."

We find from the description, in the copies of patents and deeds introduced in evidence, that these methods are adopted by the United States Government of describing bodies of land. (1) "The whole of Section . . . ." is used to describe a piece of land a mile square containing 640 acres. (2) "The whole of fractional section," is used to describe a body of land approximately a section, but which on account of a water course boundary, or an ocean, gulf of bay boundary, the total acreage of land within the boundary. lines is less than 640 acres. (3) Small fractions of a section are designated as "lots."

Following this method, the patent would have designated the 27 acres as "a lot," instead of by the grandiloquent and comprehensive term, "the whole of fractional section 28."

Even without the rule laid down by Congress, the natural interpretation of the words, "the whole of fractional section 28," would be all of the land included within the section less than 640 acres.

The construction placed by the majority of the court on the grant of "the whole of fractional section 28," is that it means only about 27 acres, and that a large body of land remains within the sectional lines after "the whole of fractional section 28" was patented to the State, and by

it conveyed to the Florida Land and Improvement Company. That is, that "the *whole* of a fractional section" was conveyed, and a *part* of the fraction remained.

Just how the "*whole of a fraction*" can be taken away, and "*part of the farction*" remain, is a mathematical puzzle; but such is the effect of the decision in this case.

I think the judgment should be affirmed.