KANNER, Chief Judge.
Title to certain lands was quieted in the plaintiffs-appellees through a final decree of the chancellor declaring that the subject property became vested in them through a deed from the trustees of the Internal Improvement Fund in 1956. The title of appellants was adjudged in the final decree to have been of no effect in that the survey made in 1858, as it concerned the source of their title, was false and fraudulent; and that the lands, being originally sovereignty lands, had not been conveyed to appellants’ predecessors in title.
The lands which comprise the subject of this controversy are situated in the bed of Lake Clarke in section 16, township 44 south, range 43 east, which section became vested in the Board of Education of the State of Florida before any of the lands within it passed into private ownership. *468 This is a fractional section only, since the northwest corner of it is within the original bed of Lake Clarke, a meandered body of water which once covered parts of the section. The official plat of this section, approved October 26, 18S9, showing the meander line of the lake and dividing the section into government lots, was based upon the original government survey made by William J. Reyes in 1858. The property here involved, consisting of approximately 4.4 acres, falls within government lot five as indicated on the original plat.
In 1909 Lake Clarke was drained through construction of a drainage canal under public authority. In 1925 a United States government surveyor determined that there existed a large quantity of unsurveyed land which was not included in the original survey but was shown on the plat of this original survey as falling within Lake Clarke, although it was in fact situated upland between the lake’s meander line and the actual shoreline of the lake. A new government survey was made in 1926 with the result that the original meander line was reestablished, and the actual shoreline of the lake was also meandered as it existed before the lake was drained. Where the plat from the original 1858 survey placed lot five upland in its entirety, the 1926 survey established that, in fact, the northwest corner of this lot was in the bed of Lake Clarke.
On May 1, 1886, the Board of Education of the State of Florida deeded the NE¡4 of the SWVi of section 16, township 44 south, range 43 east, to James C. Estes, conveying it as a full 40 acre tract. This is another description for government lot five and was the first of a sequence of transfers of that lot, subsequent conveyances describing it, however, as government lot five. In 1907 Alfred Newlander acquired lot five through a tax deed issued by the clerk of the circuit court of Dade County for delinquent taxes for the year 1901 ; and this tax title became vested in Model Land Company on January 3, 1911. Also, by mesne conveyances the outstanding record title to government lot five became vested in Model Land Company on January 3, 1913. In turn, on November 19, 1920, Model Land Company conveyed a portion of this lot five to D. P. Council, who platted in into Lake Worth Heights Subdivision. Transfer to him was under this description :
“Beginning at the center of Section Sixteen (16), Township Forty Four (44) South, Range Forty Three (43) East, according to the Public Surveys, thence running west on the quarter section line four hundred thirty (430) feet, more or less, to the waters of Lake Clark as platted on the township plat of the aforesaid township; thence southerly meandering the waters edge to its intersection with a line parallel to and distant five hundred (500) feet south from said quarter section line; thence running east on the said parallel line to the north and south quarter section line; thence running north five hundred (500) feet to the point of beginning, being the North five hundred (500) feet of Lot Five (5) of Section Sixteen (16), Township Forty Four (44) South, Range Forty Three (43) East, containing five (5) acres, more or less, together with all riparian rights held by the grantor herein and which said grantor may lawfully convey.”
Subsequently, the appellees here acquired a portion of lot 7, block K, of Lake Worth Heights adjoining Lake Clarke.
On October 17, 1955, appellants obtained a quit-claim deed from Model Land Company to the north 500 feet of lot five, section 16, township 44 south, range 43 east, excepting any portion conveyed to D. P. Council by the deed and description previously referred to herein. Later, on July 20, 1956, for a consideration of $1,540, the trustees of the Internal Improvement Fund conveyed to the appellees here, as owners of adjacent uplands, certain reclaimed lands within the bed of Lake Clarke, de *469 ■scribing the lands by courses and distances. In this deed the trustees of the Internal Improvement Fund treated as the boundary ■of Lake Worth Heights. Subdivision the corrected meander line established by the 1926 government survey. The conflict of interests comprising the source of this controversy rests upon the transfer, through this deed, of lands in the bed of Lake Clarke which are included within those quit-claimed by the Model Land Company to the appellants.
In their brief the appellants have referred to the tax deed of August 22, 1907, to Alfred Newlander, upon which they strongly rely, as a deed from the trustees of the Internal Improvement Fund. Undoubtedly this is an inadvertent error. This deed was issued for 1901 delinquent taxes by the clerk ■of the circuit court of Dade County. The appellants also contend that the lake ■changed its position after the 1858 survey, basing this argument on a statement in the field notes to the effect that lot five was “invaded by the lake”; however, the findings of the lower court and the field notes of the 1926 survey and the record do not support this assertion.
The appellants contend the chancellor erred in holding that the 1858 survey was false and fraudulent and that the 1926 survey is controlling here. However, not only does the 1920 plat of Lake Worth Heights Subdivision locate the lake in conformity to the 1926 survey, but so does the deed through which D. P. Council acquired title to the lands conveyed to him. Although the lake had been drained and was dry at the time, it appears that the lake shore itself constituted the boundary of these lands. Such boundary is plainly delineated through the calls of the deed establishing the position of the lake, as well as through the survey made for purposes of platting this small subdivision.
The evidence clearly indicates that the 1926 resurvey of the lands accurately located the shores of the lake as they previously existed and was warranted under the proposition that the 1858 survey was false or fraudulent or grossly in error. Clark on Surveying and Boundaries, second edition, sections 277 and 278, pp. 321-325, and section 396, p. 482. See also Lopez v. Smith, Fla.App.1959, 109 So.2d 176. The engineer in the 1926 survey refers to the “faulty original meander line”, to the drained lake bed, to the former mean high water mark, to the timber above the mean high water mark, and under several references to the shore escarpment. In the field notes of this survey appear the following observations :
“At the time of the original survey there was a lake lying in sections 4, 5, 8, 9, 16 and 17, which lake has since been drained by artificial means, but the former shore escarpment is very pronounced and easily followed, especially along the former East shore of the lake. The drained bed of the lake is untimbered, whereas the land lying at an elevation above the former lake level is well timbered and covered with dense undergrowth.
* * * * * *
“The former high water mark of the lake, which follows a definite escarpment is traversed throughout the section * * *.”
The true location of Lake Clarke controls the question of who owns the lands here under scrutiny. Thus the 1926 survey is germane to the problem through its establishment of the correct position of Lake Clarke as it existed at the time the 1858 survey was made. The question here relates to ownership of lands lying within what was formerly a meandered lake, and we are not considering solely a question of conclusiveness attaching to original surveys and the rights acquired in reliance upon them as set forth by appellants through cases cited in their brief. Different principles apply that do not conflict with authorities offered by appellants, since the present case concerns ownership of lands which were originally sovereignty lands.
*470 Section 16, as it concerns the lands involved, became vested in the State of Florida by act of Congress in 1845, 5 Stat. 742, for school purposes. See State ex rel. Kittel v. Jennings, 1903, 47 Fla. 302, 35 So. 986, which, it may be noted, concerned a fractional section 16. Lake Clarke as it originally existed was a large meandered lake lying over parts of section 4, 5, 8, 9, 16 and 17 in township 44 south, range 43 east. The sovereignty lands in the bed of Lake Clarke did not vest by act of Congress, however; rather they vested in the state by virtue of its sovereignty on admission into the union in 1845. Broward v. Mabry, 1909, 58 Fla. 398, 50 So. 826; Martin v. Busch, 1927, 93 Fla. 535, 112 So. 274; and South Florida Farms Co. v. Goodno, 1922, 84 Fla. 532, 94 So. 672.
Appellants assert that by the deed from the State Board of Education and by the tax deed issued in 1907, the state had parted with all title to the lands in question, so that no title remained which could be conveyed by the trustees of the Internal Improvement Fund to the appellees by the deed of July 20, 1956. We must take the contrary view. Since these reclaimed lands were originally sovereignty lands, the Board of Education was without authority to convey them; hence the deed from the Board of Education to James C. Estes on May 1, 1886, carried no title to sovereignty lands in the bed of Lake Clarke and forms no origin for appellants’ claimed chain of title to the disputed lands. Similarly, the tax deed dated August 22, 1907, for delinquent taxes of 1901, issued by the clerk of the circuit court of Dade County to' Alfred Newlander for the identical lot five in section 16, township 44 south, range 43 east, previously deeded by the State Board of Education, bore with it no title to these sovereignty lands. The reason is that the delinquent taxes so levied could not and did not attach to these sovereignty lands; so the tax deed thus issued could not and did not divest the state of its title to these sovereignty lands. Therefore, the quit-claim deed of October 17, 1955, from Model Land Company was ineffectual to transfer to appellant, Ray G. Ruyle, any interest within the dry bed of Lake Clarke, since Model Land Company, the grantor, had acquired no title to these lands. It must be emphasized, however, that the lake was drained completely about the year 1909 by construction of the Palm Beach drainage canal, a date subsequent to both conveyances on which appellants attempt to base their chain of title.
The conclusion is inevitable that the first valid conveyance of these reclaimed lands was constituted within the deed to appellees on July 20, 1956, from the trustees of the Internal Improvement Fund, and the chancellor so held. The final decree of the chancellor is affirmed.
Affirmed.
ALLEN and SHANNON, JJ., concur.