THORNAL, Justice.
Appellants Forman ask us to reverse a final decree adverse to their complaint in a suit to quiet title.
We are called upon to determine whether riparian rights can be appurtenant to “swamp and overflow lands” and whether the evidence supported the chancellor’s conclusion adverse to appellants’ asserted title.
We have previously considered this same litigation. Forman v. Florida Land Holding Corp., Fla.1958, 102 So.2d S96. We accept jurisdiction of the instant appeal in accord with the rule announced in Armenian Hotel Owners, Inc., et al. v. Kulhanjian, Fla.1957, 96 So.2d 896.
The basic factual situation which has produced the controversy is related in some detail in our opinion disposing of the prior appeal. At that time we reversed a decree dismissing the complaint and remanded the cause to the chancellor to enable the parties to present evidence. The chancellor has now heard the evidence and by his decree-which reflects careful preparation and a thorough understanding of the issues, helms again found against the plaintiffs’ position.
'•"We think a clearer understanding of the issues can be accomplished by a drawing of the land as reflected in a government survey of 1870 and another drawing showing the land as it allegedly exists today. We have-made no effort to draft these sketches according to scale. We supply them herewith merely to reveal reference points and to clarify the contentions of the parties. The drawings are as follows:

*785

*786 The plaintiffs Forman argued before the chancellor and reiterate here two basic contentions to support their claim for relief. It should be noted that they claim to own the South 10 chains of the North 32 chains of Government Lot 1, as pictured in sketch no. 2. Plaintiffs claim that this piece of land actually exists as shown in sketch 2, and that it originally constituted a part of Government Lot 1, as pictured in sketch no. 1. Appellants contend that Government Lot 2 claimed by the appellees was “swamp and overflow land” which was acquired by the State of Florida under the Swamp Land Act of 1850. Chapter 84, 9 U.S.Statutes at Large, 519; Title 43 U.S.Code Annotated, § 981 et seq. From this the plaintiffs reason that such “swamp and overflow lands” would not support riparian rights as an appurtenance. Therefore, they assert that the 1870 west boundary line of New River Sound constituted an established fixed east line of Government Lot 2, and that the owner of this lot enjoyed no riparian rights resulting from any accretion to its eastern boundary. Plaintiffs asserted that Government Lot 1 was no such swamp land; that it constituted an upland to which riparian rights could attach and that when New River Sound was eliminated either by artificial fill resulting from the dredging of Port Everglades to the north or by a gradual process of reliction, the western boundary of Government Lot 1 ultimately became what was originally the western boundary of New River Sound. The second contention of the appellants was that Government Lot 1 actually migrated due west across New River Sound a distance of about 650 feet and affixed itself leech-like to the eastern boundary of Government Lot 2. This leads appellants to conclude that the identifiable strip of land which has been added to original Government Lot 2 is, in actuality, a part of original Government Lot 1. To support this contention the plaintiffs presented detailed scientific testimony of a geologist and an ecologist, as well as testimony of surveyors and experts in the matter of submerged lands.
The appellees defended against the claims of the appellants with the contention that riparian rights can be appurtenant to “swamp and overflow lands” and they offered testimony to support their position that actually Government Lot 1, as it originally existed, had disappeared by a process of erosion from the severity of the elements in the form of tides, winds and tropical hurricanes which have been known to assault the Florida coast.
By his final decree the chancellor admitted that there had been some accretion to Government Lot 2. Where this land came from, he conceded to be a matter of bald speculation. He was satisfied, however, that it was not an “immigrant parcel” which had abandoned its pristine anchorage to the bottom of the sea and migrated intact directly west to a new location on the boundary of Government Lot 2.
A through examination of the voluminous record including maps, drawings, sketches and photographs, leads us to the conclusion that the chancellor ruled correctly on the basis of the evidence presented and that his ultimate decree should be affirmed.
We dispose of the first contention regarding riparian rights as an appurtenance to swamp and overflow lands. The parties confess to an inability to locate any precedent for or against the contention. Appellants referred to Section 533 of the Manual of Surveying Instruction, 1947, issued by the United States Department of the Interior. From this we read:
“Riparian rights, as defined by the laws of the several States, which are applicable within the beds of lakes, streams, and tidal waters, are not enforceable over the swamp and overflow lands granted to the States.”
Appellants conclude from the quoted statement that riparian rights do not attach to so-called “swamp and overflow lands”. We do not so interpret the quoted provision. It simply means that riparian rights are not enforceable over such lands.
*787 The chancellor concluded, and we think correctly, that the appellees-defendants are not claiming riparian rights “over” swamp and overflow lands. Rather, they assert such rights over what was formerly New River Sound, which the chancellor also concluded, with adequate evidence to support him, was a navigable body of water. Lands under navigable waters were not included in the congressional grant provided for in the Swamp Lands Act of 1850, supra. South Florida Farms Co. v. Good-no, 84 Fla. 532, 94 So. 672, 677; State ex rel. Ellis v. Gerbing, 56 Fla. 603, 47 So. 353, 22 L.R.A.,N.S., 337. In South Florida Farms Co. v. Goodno, supra, [84 Fla. 532, 94 So. 672, 676] this court expressly concluded that “a sawgrass marsh” should be treated as land. In Martin v. Busch, 93 Fla. 535, 112 So. 274, 285, we recognized that “uplands” are those bordering on bodies of water. The opinion, however, specifically states that “conveyance of uplands, including swamp and overflowed lands” do not ordinarily include sovereignty land below the ordinary high level water mark of lands under navigable water. It is obvious in Martin v. Busch, supra, this court clearly recognized the fact that “uplands” includes swamp and overflow lands.
In his decree the chancellor mentioned the case of State v. Forsyth, 92 Ind.App. 513, 162 N.E. 661. Although not discussed by either of the parties, this decision appears squarely to hold that riparian rights may be appurtenant to swamp and overflow lands conveyed to a state under the Swamp Land Act.
The other aspect of appellants’ contentions involve largely a matter of determining whether there was adequate evi-dentiary support in the record for the chancellor’s conclusion that Government Lot 1 had not “migrated” as a composite body of land from its original position to the former eastern boundary of Government Lot 2. Such geographic phenomena have been thought to occur, Voltaire, A Philosophy of History, Introduction. We think, however, that the chancellor here reasoned correctly in concluding that the prevailing winds and tides could not possibly have transplanted former Government Lot 1 in a direct westerly direction. It was more likely, he concluded, that the tropical disturbances in the form of hurricanes and less severe storms had by a process of erosion completely eliminated former Lot 1 as a parcel of land and had accomplished its submergence to the bottom of the sea. This product of nature’s forces eliminated the barrier reef separating New River Sound from the Atlantic Ocean and thereafter the two bodies of water became indistinguishable, without a line of separation or demarcation. It is true that by an apparent process of accretion, a strip of land has been added to the eastern boundary of Lot 2, with the result that the Atlantic Ocean, rather than New River Sound, now constitutes the natural eastern boundary of that lot. Despite the thoroughness and ingenuity so typical of appellants’ counsel, we are satisfied from this record that the chancellor concluded correctly when he held that the plaintiffs had failed to establish a title to the strip in dispute in order to justify the entry of a decree quieting such claimed title in them.
Appellants add a further contention to the effect that Appellee Broward County is estopped to deny appellants’ alleged title to a part of Government Lot 1, because appellants ground their claim on a tax deed based on county tax certificates. We deem it unnecessary to become involved in the complexities of a discussion of establishing title by estoppel. The simple and direct answer to appellees’ contention merely is that the Chancellor has found, and we agree, that the land in this litigation is not a part of Government Lot 1 to which appellants claim title. Hence, there is nothing upon which the asserted estoppel can operate. Regardless of whether title can or cannot be created by estoppel, it is a physical fact that certainly land cannot be ere*-ated by estoppel.
*788 Finding as we do that the decree of the chancellor is not infected with reversible error, it is hereby affirmed.
It is so ordered.
TERRELL, Acting C. J., HOBSON and DREW, JJ., and STURGIS, District Court Judge, concur.