BOYER, Judge.
Appellant, St. Joseph Land and Development Company, a Florida corporation, plaintiff below (hereinafter generally referred to as “St. Joseph”), filed an action for a declaratory judgment against the State of Florida Board of Trustees of Internal Improvement Trust Fund (hereinafter generally referred to as the “Trustees”), appellee, in Circuit Court in and for Gulf County, Florida. The Complaint, which was filed December 4, 1972, seeks a judgment “declaring the location of the boundary lines separating * * * the lands' owned” by St. Joseph and the adjacent sub *1086 merged lands owned by the Trustees. The Complaint alleges that St. Joseph is the owner of the lands involved and has record title to those lands. St. Joseph further alleges in the Complaint that the descriptions used to convey title to both St. Joseph’s predecessors in title and to St. Joseph were based upon the plats of the original United States survey, including the acreages shown on those plats, and that it had been assessed and taxed on that amount of acreage for in excess of thirty years.
The Trustees filed an answer and an Amended Answer which denied the material allegations of the Complaint and affirmatively sought to dismiss the Complaint. An Order denying dismissal was entered by the Court on February 14, 1973.
The Trustees filed an interlocutory appeal to this court based upon the denial of its Motion to Dismiss. We upheld the Order of the lower Court. (State, etc. v. St. Joe Paper Co. et al, 280 So.2d 40 (Fla. 1st DCA 1973)) The Trustees then sought cer-tiorari in the Supreme Court which was denied. (State, etc. v. St. Joe Paper Co., 285 So.2d 27 (Fla.1973))
Prior to final hearing, St. Joe Paper Company and St. Joseph reached an agreement with the Trustees as to the location of the boundary line on all lands except:
N lh of fractional Section 1 and the N V2 of fractional Section 2, Township 9 South, Range 11 West
All of fractional Sections 23, 26 and 35 of Township 8 South, Range 11 West.
The Court entered its Final Judgment on August 4, 1976. The Settlement Agreement is included and incorporated therein. This is an appeal from that Final Judgment. Only St. Joseph’s land is involved and it is the sole appellant.
The subject land consists of three and one-half miles of waterfront fronting on St. Joseph Bay. Appellant has record title to those lands.
The north V2 of fractional section 1 and the north V2 of fractional section 2 were originally conveyed by the United States to the State of Florida as swamp and overflow lands. After a number of mesne conveyances, St. Joseph acquired title in 1936 and has been in peaceful possession since, having paid the taxes for at least thirty years. The balance of the lands (fractional sections 23, 26 and 35) were conveyed by patent prior to Florida becoming a state. After a number of mesne conveyances St. Joseph acquired title to those fractional sections in 1905 and has been in possession for almost seventy-two years, having paid the taxes for over thirty years.
The descriptions in the patents out of the United States adopt the plat of the United States surveys including the acreages shown on those plats. The description in the subsequent conveyance by the State of Florida also adopts the plat of the United States surveys and the acreages shown on those plats.
St. Joseph claims the number of acres which it purchased, and on which it has been taxed. The Trustees claim that portions of the low, flat, marshy coastal lands are below the mean high water line, and therefore, are owned by the State.
Appellant phrases the points at issue as follows:
I.
DOES ST. JOSEPH LAND AND DEVELOPMENT COMPANY HAVE A RIGHT TO AN ACCURATE DETERMINATION OF THE PRESENT BOUNDARY LINE WHICH SEPARATES ITS UPLANDS FROM THE ADJACENT SOVEREIGN LANDS OWNED BY THE FLORIDA STATE BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT FUND?
II.
MUST THE FLORIDA STATE BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND BEAR THE BURDEN OF PROVING THE LOCATION OF THE MEAN HIGH WATER WHEN THAT BOARD ASSERTS ITS TITLE TO WATERFRONT LANDS OWNED BY A PRIVATE *1087 LANDOWNER FOR OVER FORTY (40) YEARS?
III.
IS THE FLORIDA STATE BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND EITHER ESTOPPED OR BARRED FROM CLAIMING LANDS TO WHICH ST. JOSEPH LAND AND DEVELOPMENT COMPANY HAS HAD RECORD TITLE FOR OVER FORTY (40) YEARS?
We will consider the points in the order presented.
We are of the view that, as a general proposition of law, St. Joseph’s first point should be answered in the affirmative, viz: That it does have a right to an accurate determination of the present boundary line which separates its uplands from the adjacent sovereign lands owned by the Trustees. However, under the particular facts of this case, we are not of the view that the learned trial judge erred in failing to make that determination.
In its complaint, St. Joseph affirmatively alleged:
“Defendants are the holders, in trust, of the title of the sovereignty lands adjacent to the lands [owned by St. Joseph] which lie below the mean high tide land.”
That allegation was specifically admitted in the Trustees’ answer. There was accordingly no issue but that the Trustees held in trust the title to the adjacent lands “below the mean high tide line.” In the final judgment here appealed, the trial judge held, resolving conflicting evidence on the issue, “that the line of mean high water can be established with a certain degree of reasonableness and that line of mean high water is the boundary line between the lands owned by the plaintiffs and those owned by the sovereign State of Florida.” St. Joseph takes exception to the qualifying phrase “with a certain degree of reasonableness”. However, upon considering the entire final judgment in the light of the evidence revealed by the record we do not hold the trial judge to be in error by having employed that phrase. We judicially know, as do all reasonable people, that few matters are susceptible of absolute certainty and exactitude. The determination of a fact, therefore, “with a certain degree of reasonableness”, particularly when the fact or matter is one to be proved by a preponderance of the evidence, is sufficient to withstand appellate criticism.
Nor may we hold, on the state of the record in this case, that the trial judge erred in not fixing a determinable course and distance survey line establishing the “mean high water” or “mean high tide” boundary separating the parties’ property. A trial judge (as well as an appellate court) is bound by, and restricted by, the evidence adduced by the parties.[1] In the case sub judice, although the pretrial order refers to “plaintiffs’ survey of the mean high water line” no such survey appears in the record; therefore the trial judge was without evi-dentiary facts upon which to have based an exact course and distance boundary line. His determination that the dividing boundary line is the “mean high water line” is as definite as is permitted by the evidence adduced, and furnishes a sufficient basis for a surveyor to now describe same for future litigation, should such occur. Further, it is relevant to note, as pointed out in appellee’s brief, that the prayer of St. Joseph’s complaint did not request the determination of a course and distance survey line but only prayed for a judgment “declaring the location of the boundary lines separating the above described lands * * * The finding ir the final judgment, we hold, that the “line of mean high water is the boundary line between the lands owned by the plaintiffs and those owned by the sovereign State of Florida” is sufficient, under the circumstances of this particular case, to comply with the prayer of the complaint.
*1088 It was the thrust of St. Joseph’s argument in the trial court, and now here, that the meander line reflected on the original government survey must be determined to be the boundary line because, St. Joseph alleged in its complaint and later sought to prove, the mean high water line was impossible of determination. It later modified that position, admitting that the mean high water line was capable of being determined, but took the position that it would require a minimum of 18.6 years in which to do so and that under those circumstances the meander line should be the boundary. The record reveals that St. Joseph did indeed adduce substantial competent evidence in support of that position. However, there was other evidence to the contrary, sufficient to sustain the trial judge’s resolution of that issue.
St. Joseph has called to our attention an opinion of our Sister Court of Third District rendered subsequent to oral argument herein.[2] Although we agree with St. Joseph that that opinion is excellently written and discusses many relevant cases, it is not dis-positive sub judice because of material differences (as reflected by the opinion itself) in issues made by the pleadings, factual distinctions, and physical evidence adduced.[3] Further, a material difference is that in that case the appellate court affirmed the trial judge’s decision rendered on conflicting evidence, whereas we are here sought to reverse.
In summary, we affirm the holding of the trial judge that the mean high water line marks the boundaries between the properties owned by the parties and involved in this proceeding. Our affirmance should not be construed as a holding that appellant is not entitled to have the exact location of that line determined, but only that under the pleadings and proofs revealed by the record on appeal the learned trial judge did not err in failing so to do.
St. Joseph’s second point[4] is not subject to an abstract affirmative or negative response. Instead, the answer depends upon the facts of the particular case. It depends, among other things, on where the burden of proof lies. As an example, were the Trustees attempting to eject St. Joseph from lands claimed by it then the Trustees, being the plaintiffs, would no doubt have the burden of proof, which may, depending upon the circumstances of the particular case, require proof of the location of the mean high water mark. However, sub judi-ce, it was St. Joseph which was the plaintiff and which had the burden of proof. The record on appeal simply reveals that it failed in that regard. Having failed to establish a prima facie case as to the location of the high water line, there was no burden upon the defendant Trustees so to do. The learned trial judge did not therefore err in that regard.
The trial court was concerned with the coastal boundary line of the subject lands owned by St. Joseph. There was no dispute in the lower court regarding the holder of record title to those lands. Rather the dispute focused on whether the coastal boundary would be located at the meander line or the mean high water line.
St. Joseph argues that the description of its lands may be determined by reference to the original government surveys and that under South Florida Farms Co. v. Goodno, 84 Fla. 532, 94 So. 672 (1922), the notes, lines, landmarks and other particulars become part of the patent or deed when lands are conveyed according to the plat of the original government survey: But appellant has apparently misconstrued the significance of the Goodno case insofar as it bears on the case sub judice. Actually that case supports the Trustees’ position by stating that:
*1089 “The rule of general application is that, where a patent to public land refers to the field notes and plats of an official survey, which field notes and plats show that the land is bounded by a permanent body of water, and that in making the official survey the waters were in fact faithfully meandered, the water line, and not the meander line, is in general the boundary. * * * But where an official survey meanders not a permanent body of water, but low marsh or similar lands that are adjacent to other lands being surveyed, the meander line is the boundary.” (94 So. at page 675)
St. Joseph’s land, evidence reveals, is bounded by a permanent body of water, St. Josephs Bay or Bay St. Joseph, an inlet of the Gulf of Mexico. The meander line is not a meandering of “impracticable saw-grass marsh” as in the Goodno case, but a meandering of a Gulf bay as a permanent water body. The conclusion to be drawn from the Goodno decision is that the mean high water line is the boundary of St. Joseph’s lands. St. Joseph does indeed have record title to the lands described, but the description and the particular topography limit St. Joseph’s record ownership to the mean high water line.
St. Joseph adds to its argument that it has marketable title to its lands under Chapter 712, Florida Statutes, and that the record shows no adverse claim of the Trustees. Whether St. Joseph has marketable record title to the fractional section lands described has no bearing on the question whether the coastal boundary is located at the meander line or mean high water line.
The question of precisely what portion of the subject lands are below the mean high water line was never really before the trial court nor seriously considered by it. St. Joseph did put on evidence to establish record title to certain coastal lands, but, as already observed, proof of record title to fractional sections which border on a permanent water body is not proof of title seaward of the mean high water line.
The Trustees presented evidence to prove that the mean high water line can be located and that the method for locating that line is not unreasonable to perform pursuant to Chapter 177, Part II, Florida Statutes, the Florida Coastal Mapping Act. The trial court necessarily disagreed with St. Joseph’s expert’s contention that it would take 18.6 years to determine the mean high water line. It was entitled so to do under the state of the evidence reflected by the record on appeal.
St. Joseph relies on Trustees of Internal Improvement Fund v. Wetstone, 222 So.2d 10 (Fla.1969), Martin v. Busch, 93 Fla. 535, 112 So. 274 (1927), and Hardee v. Horton, 90 Fla. 452,108 So. 189 (1925) to suggest that a specific legal description of the mean high water line ought to have been established below, and that failing, that the meander line ought to have been held the proper boundary. However, as already observed above, the pleading issues of this case as well as the facts to be gleaned from the evidence simply renders the holdings of those cases inapplicable here.
Finally, St. Joseph contends that the Trustees are either estopped or barred from claiming lands to which St. Joseph has had record title for over forty years. The problem with that contention is that the record simply does not reflect that the Trustees are in fact claiming any lands to which St. Joseph has had record title.
St. Joseph seems to be arguing that the Trustees are legally estopped from claiming to the mean high water line rather than the meander line because a government survey at the time the land was conveyed to St. Joseph’s predecessor in title indicates the parcel contains a specific number of acres. However, a quantity of land indicated in a government survey cannot control the description since the general rule is that the mean high water line is the boundary even where a meander line is also given. This principle is well-stated in Connery v. Perdido Key, Inc., 270 So.2d 390 (Fla. 1st DC A 1973) wherein the court said:
“Where the original government land office plat shows a tract of land to have as its boundary a body of water, such water *1090 course is a natural monument which will constitute the boundary of the land, even if distant or variant from the position indicated for it by the meander line, and will control as a call of the survey over either distances or quantity of land designated in the conveyance or on the government plat. (270 So.2d at page 394)
The acreage based on the meander line is merely an estimate of the land involved and is seldom precise in a government survey. The meander line simply defines the sinuos-ities of the shoreline.
“Meander lines are run in surveying fractional portions of the public lands bordering on navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of land in the fraction subject to sale, which is to be paid for by the purchaser. * * * . . .the watercourse, and not the meander line as actually run on the land, is the boundary.” (270 So.2d at pages 393, 394)
The doctrine of legal estoppel may not be applied against the Trustees based only on the quantity of land recited in a survey attached to an earlier deed.
St. Joseph is correct in stating that the Florida Supreme Court has under various circumstances applied the doctrine of equitable estoppel against the State. However, in none of the cases relied upon by St. Joseph have the facts resembled the case sub judice. In three of the cases, government lands were erroneously conveyed to private parties, after which the private owners held the lands for substantial periods of time and paid taxes on them. (Daniell v. Sherrill, 48 So.2d 736 (Fla.1950); Trustees of Internal Improvement Fund v. Bass, 67 So.2d 433 (Fla.1953); Florida Board of Forestry v. Lindsay, 205 So.2d 358 (Fla. 2nd DCA 1967)). The record does not reveal, on the other hand, that St. Joseph holds title to any lands claimed by the state. The land described in St. Joseph’s deeds extends only to the mean high water line. Nor does Trustees of Internal Improvement Fund v. Claughton, 86 So.2d 775 (Fla.1956), give comfort in the present case. Equitable estoppel operated against the State in the Claughton case because the State had for many years acquiesced to the private ownership of a filled-in and developed tract of land. The land to which the Trustees claim ownership in the case sub judice is, however, only that land which is covered and uncovered by the tides, which has never been filled in or developed, and which the Trustees have always assumed they owned by virtue of its being below the mean high water line and which they have not heretofore conveyed.
Our above holdings renders it unnecessary to discuss the other arguments urged in the briefs. No further points having been presented for our consideration, the final judgment here appealed is
AFFIRMED.
McCORD, C. J., and MILLS, J., concur.

. Plus, of course, any admitted or stipulated facts or matters of which the court may properly judicially take notice.

. Florida Bd., etc. v. Wakulla Silver Springs, 362 So.2d 706 (Fla. 3rd DCA 1978).

. We note, for instance, from page 712 of that opinion, that several surveys were introduced Into evidence before the trial judge in that case.

.Must the Florida State Board of Trustees of the Internal Improvement Trust Fund bear the burden of proving the location of the mean high water when that Board asserts its title to waterfront lands owned by a private landowner for over forty (40) years?